STATE of Wisconsin, Plaintiff-Respondent,

v.

Glen P. RICHARDSON, Defendant-Appellant.

Supreme Court

*No. 89-1375-CR. Argued May 30, 1990.—Decided June 28, 1990.*

(Also reported in 456 N.W.2d 830.)

For the defendant-appellant there were briefs (in the court of appeals) and oral argument by *Ruth S. Downs,* assistant state public defender.

For the plaintiff-respondent there was a brief by *James M. Freimuth,* assistant attorney general, with whom on the brief (in the court of appeals) was *Donald J. Hanaway,* attorney general and oral argument by *Sally Wellman,* assistant attorney general.

STEINMETZ, J. This appeal is before this court on certification by the court of appeals pursuant to sec. (Rule) 809.61, Stats. The defendant, Glen P. Richard-

son, appealed to the court of appeals seeking review of a judgment of conviction rendered against him in the circuit court for La Crosse county, Peter G. Pappas, Judge.

Two issues are presented for review. The first issue is whether an anonymous tip on which the tipster gave a detailed description of the defendant and his immediate future plans, the innocent details of which were corroborated through personal observation by police, provided the police with reasonable suspicion to execute an investigative stop of the vehicle and frisk of the defendant. We conclude that the detail within the tip and personal verification by police of all innocent detail provided therein as true allowed a reasonable inference that the tipster was also correct about the ultimate fact—that the defendant's motive was to traffic illegal drugs—such that the police had reasonable suspicion upon which to execute both an investigative stop of the vehicle and a protective frisk of the defendant.

The second issue is, assuming the investigative stop and frisk are lawful, whether the subsequent body search of the defendant went beyond the scope of a *Terry*[1] stop and frisk such that the evidence found in the defendant's pockets is inadmissible. Under the circumstances of this case, we conclude that the police had probable cause to conduct a search of the defendant's person such that the packets of cocaine found in his pockets were lawfully seized. We therefore affirm the circuit court order admitting the cocaine into evidence and uphold the judgment of conviction.

On November 4, 1988, the defendant, Glen P. Richardson, was driving a car in the city of La Crosse when he was stopped by the police. Two other men were with him at the time of the stop. The defendant was searched

---

[1] *Terry v. Ohio,* 392 U.S. 1 (1968).

and was found to have approximately one-third of an ounce of cocaine on his person and various small drug paraphernalia.

The criminal complaint filed November 9, 1988, accused the defendant of possessing cocaine with intent to deliver contrary to secs. 161.16(2)(b) and 161.41(1m)(c)1, Stats., as a party to the crime, in violation of sec. 939.05. The amended complaint and information, both filed November 16, 1988, contained further information that the defendant was a repeat drug offender who, upon conviction, would be subject to penalty enhancement under sec. 161.48.

On November 23, 1988, the defendant filed a motion to suppress all evidence seized from him on November 4, 1988. The motion was based on statutory grounds and on the Fourth Amendment to the United States Constitution and Article I, sec. 11 of the Wisconsin Constitution.

At the hearing on the motion to suppress, Investigator Donald Sutton of the La Crosse Police Department testified that on November 4, 1988, his shift commander, Lt. Jacobs, called and informed him that an anonymous telephone call had been received from a male who wished to speak with a detective about drug trafficking out of Viroqua, Wisconsin. Officer Sutton called the number given to him, which was later traced to a public telephone booth, and spoke with an individual who stated that, at that moment, the defendant and another specifically identified man were en route from Viroqua to La Crosse with about one-quarter ounce of cocaine which they intended to sell in La Crosse. The caller said that he had been with the two men and had personally seen the cocaine, a substance with which he was familiar.

The anonymous caller described the vehicle in which the men were traveling as a 1978 Camaro and gave the license plate number. The caller also described both men. In particular, the caller described the defendant as an extremely large man, weighing around 300 pounds and standing about six feet tall. The defendant was further described as having some scarring on his face and as having hands that had nubs instead of fingers.

Officer Sutton was told the time at which the men had left Viroqua and when they would be expected to arrive in La Crosse. He was also told that the men would stop at an unknown residence in La Crosse. The caller suggested that the authorities wait to pick up the two men until after the stop in La Crosse because he thought they were going to pick up additional cocaine at that time.

The caller expressed concern over the defendant's involvement in drug trafficking and voluntarily expressed interest in going through the Crime Stopper Program. The caller also told Officer Sutton that the defendant had previous problems with drug related offenses, but the officer did not have time to verify this information until after the defendant was searched and arrested. Prior to speaking with the anonymous caller, Officer Sutton testified that he had no suspicions regarding the defendant and the sale of any illegal controlled substances.

Officer Sutton further testified that the anonymous caller specifically revealed that the defendant, the passenger in the car, was travelling on Highway 14 to Highway 35 and would travel through Westby and Coon Valley, Wisconsin. The caller suggested that the officer act quickly if he was going to intercept the car. Based on the information in this tip, Officer Sutton set up surveillance on Highway 14, a short distance from its intersec-

tion with Highway 35. He was met at the surveillance point by an Officer Byerson, whom he informed of the details of the surveillance.

Shortly thereafter, the described Camaro, with a large male passenger, passed the surveillance point, and the officers then followed the vehicle along the described route into La Crosse where the vehicle stopped at an apartment building. While the men were inside the building, Officer Sutton called for assistance, and Officers Larson and Hogan arrived and were briefed on the situation. Officer Sutton informed Officer Larson that a felony-type traffic stop would be effectuated, meaning that the situation was considered high risk and that weapons would be drawn. A roadblock situation was set.

After approximately one-half hour, during which time constant surveillance by Officers Sutton and Byerson was effectuated, the defendant, accompanied by his original companion and a third man, exited the building, entered the car and drove away. The officers followed. Officer Byerson testified that neither the automobile nor its occupants engaged in any suspicious behavior. Neither he nor Officer Larson testified at the motion hearing that any traffic laws had been violated. Nevertheless, the vehicle was stopped and its occupants were removed, and the defendant was searched. As stated, the search of the defendant's person revealed that he was in possession of cocaine.

The circuit court denied the defendant's motion on the record at the close of the evidentiary hearing. The circuit court concluded based on the testimony elicited that the anonymous caller's information, verified on all points up to the actual sighting of the drugs, justified the stop and subsequent search under the United States

Supreme Court holding in *Adams v. Williams,* 407 U.S. 143 (1972).

After his motion to suppress evidence was denied, the defendant pleaded guilty to the charge of possession of cocaine with intent to deliver as a party to the crime. The plea was accepted. Judgment was entered on March 30, 1989, at which time the defendant was sentenced as a repeat offender to seven years in prison.

The defendant appealed the judgment of conviction to the court of appeals seeking review of the circuit court's denial of his motion to suppress and requesting plea withdrawal. The court of appeals certified the appeal to this court, and we accepted certification.

The first issue on appeal questions whether corroboration of only innocent details in a tip from an anonymous telephone caller may be relied upon by police to form the reasonable suspicion necessary to effectuate an investigative stop and frisk under *Terry v. Ohio,* 392 U.S. 1 (1968). The defendant maintains that La Crosse police lacked reasonable suspicion to stop his vehicle based on an anonymous telephone tip. The defendant argues that the corroboration of purely innocent details is insufficient to supply police with reasonable suspicion to effectuate an investigative stop.

Rather, under the totality of the circumstances, the defendant argues that police officers must be able to supply specific and articulable facts from which rational inferences can be made indicating that the observed conduct of the defendant carried with it a degree of suspicious activity. The defendant asserts that the purely innocent details verified by the police in this case raise no reasonable inference of a degree of suspicion in the defendant's conduct necessary to justify the stop.

In contrast, the state asserts that the level of detail supplied by the anonymous caller in this case and the

corroboration of all of the innocent details by police observation is sufficient to supply police with the reasonable suspicion needed to lawfully effectuate an investigatory stop. The state maintains that if the anonymous tipster is found through police observation to be true and correct about the innocent facts within the tip, this allows the reasonable inference by police that the tipster is true and correct about the ultimate fact. This inference is in turn sufficient under the totality of the circumstances to allow police to form the reasonable suspicion needed to make an investigative stop. According to the state, requiring police corroboration of conduct that is somehow inherently suspicious or criminal in and of itself unduly shifts the balance too far in favor of the citizen's right not to be interfered with unreasonably and against legitimate governmental and societal interests in crime prevention, protection and prosecution.

Both the fourth amendment to the federal constitution and Article I sec. 11 of the Wisconsin Constitution guarantee citizens the right to be free from "unreasonable searches and seizures." The Wisconsin Supreme Court consistently follows the United States Supreme Court's interpretation of the search and seizure provision of the fourth amendment in construing the same provision of the state constitution. *See State v. Fry,* 131 Wis. 2d 153, 171-72, 388 N.W.2d 565 (1986).

In reviewing an order suppressing evidence, this court will uphold a trial court's findings of fact unless they are against the great weight and clear preponderance of the evidence. *State v. Jackson,* 147 Wis. 2d 824, 829, 434 N.W.2d 386 (1989). However, whether a seizure or search has occurred, and, if so, whether it passes stat-

utory[2] and constitutional muster are questions of law subject to de novo review. *Id.* at 829 (citing *State v. Guzy,* 139 Wis. 2d 663, 407 N.W.2d 548 (1987)).

This issue is governed by a combined review of principles for an investigative stop set down by the United States Supreme Court in *Terry,* 392 U.S. 1, and a review of principles analyzing an anonymous tip set by the high court in *Illinois v. Gates,* 462 U.S. 213 (1983) as recently confirmed in *Alabama v. White,* No. 89-789, 1990 U.S. LEXIS 3053. We conclude that even though police may have lacked probable cause to arrest the defendant at the time his automobile was stopped,[3] they possessed reasonable articulable suspicion for an investigatory stop.

In *Terry,* 392 U.S. at 22, the Court recognized the legitimacy of an investigative stop as effectively meeting government interests in crime prevention and protection stating: "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." In *Adams,* 407 U.S. at 145-46, the Court provided the following explanation justifying the *Terry* stop:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his

[2]The defendant does not claim that secs. 968.10, 968.24 or 968.25, Stats., afford him greater protection than the state and federal constitutions. Neither party contests the fact that the stop constitutes a seizure of the defendant's person. We therefore review the reasonableness of the stop, frisk and search in question.

[3]We do not decide the issue of whether the police officers had probable cause to arrest the defendant at the time the car was stopped in this case.

shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response . . .. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

To execute a valid investigatory stop, *Terry* and its progeny require that a law enforcement officer reasonably suspect, in light of his or her experience, that some kind of criminal activity has taken or is taking place. *Terry,* 392 U.S. at 30; sec. 968.24, Stats. Such reasonable suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. These facts must be judged against an "objective standard: would the facts available to the officer at the moment of the seizure . . . 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* at 21–22. This test applies to the stopping of a vehicle and detention of its occupants. *See e.g., United States v. Hensley,* 469 U.S. 221, 226, 233 (1985); *Guzy,* 139 Wis. 2d at 675.

The focus of an investigatory stop is on reasonableness, and the determination of reasonableness depends on the totality of circumstances:

It is a common sense question, which strikes a balance between the interests of society in solving crime and the members of that society to be free from unreasonable intrusions. The essential question is whether the action of the law enforcement officer was

reasonable under all the facts and circumstances present.

*Jackson,* 147 Wis. 2d at 831 (citing *Guzy,* 139 Wis. 2d at 679).

In *Gates,* 462 U.S. at 230–31, the United States Supreme Court stated that whether information from an anonymous informant gives rise to probable cause for a search warrant is to be determined under a totality of the circumstances test. This test, according to the Court, represents an abandonment of an overly rigid application of a two-prong test that lower courts had been using to test the reasonableness of an officer's reliance on information provided by informants. *Id.* at 238.[4] However, within the totality of circumstances test, the *Gates* Court stated that an "informant's 'veracity,' 'reliability,' and 'basis of knowledge,' " remained highly relevant. *Id.* at 230. Although the *Gates* totality of the circumstances test was used to uphold probable cause for a search warrant, both parties in this case agree, as does this court, that the test applies equally to a review of whether the details of an anonymous tip provide police officers with the reasonable suspicion necessary to make a valid *Terry* stop.

The defendant does not contend that a tip provided by an anonymous informant is per se unreliable or that it can never rise to the level of reasonable suspicion for a *Terry* stop. Instead, the gist of defendant's argument is based in the following language in *Gates,* 462 U.S. 243–44 n.13: "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion

---

[4]The rigidly applied test abandoned for the totality of the circumstances test is that developed in *Aguilar v. Texas,* 378 U.S. 108 (1964) and *Spinelli v. United States,* 393 U.S. 410 (1969).

that attaches to particular types of noncriminal acts." This same language was repeated in *United States v. Sokolow,* 109 S. Ct. 1581, 1587 (1989), to which the Court added the "principle applies equally well to the reasonable suspicion inquiry." From this language, the defendant maintains that verified details of an anonymous tip must carry with them a degree of articulable, suspicious conduct. In this case, the defendant argues that none of the facts or predicted acts corroborated by police carried any connotation of illegality.

The definitive decision by the United States Supreme Court is in *White,* No. 89-789, 1990 U.S. LEXIS 3053. The facts in *White* were also of a tip from an anonymous informant. The information given the police was not as complete or thorough as in our instant case and yet the Court held the stop by the police of White's car after verification of information constitutionally proper. The *White* Court noted that while the anonymous tip may have been insufficient to support an arrest or search warrant, the independently verified information carried sufficient 'indicia of reliability' to justify a forcible stop. *Id.* at 3053, *6 at 4.

The Court in *White* also stated: The Court's opinion in *Gates* gave credit to "the proposition that because an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." *Id.* at 3053, *12, at 6 citing *Gates,* 462 U.S. at 244. Finally, in *White* the Court stated: "When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." *Id.*

We conclude that the reasoning in *White* is reasonable and appropriate not only for the Fourth Amendment

of the United States Constitution but also Article I, sec. 11 of the Wisconsin Constitution. *See Fry,* 131 Wis. 2d 171–74.

Contrary to the defendant's assertion, we conclude that the corroboration by police of innocent details of an anonymous tip may under the totality of the circumstances give rise to reasonable suspicion to make a stop. The corroborated actions of the suspect, as viewed by police acting on an anonymous tip, need not be inherently suspicious or criminal in and of themselves. Rather, the cumulative detail, along with reasonable inferences and deductions which a reasonable officer could glean therefrom, is sufficient to supply the reasonable suspicion that crime is afoot and to justify the stop.

In reaching this conclusion, this court recognizes two principles gleaned from case law cited herein. First, the greater the amount, specificity and uniqueness of the detail contained in an anonymous tip, the more likely it is that the informant has an adequate basis of knowledge. When attempting to define the nature of the verified details of the tip necessary, the *White* Court placed special emphasis on the police verification of the caller's predictions of the third party/suspect's future actions. *White,* 1990 LEXIS 3053 *12 at 6. The Court referred to this as a verification of significant aspects of the tip. We adopt this aspect of verification of the anonymous tip which serves to avoid investigative stops based on minimal facts that any passerby or resident on the street could enunciate. Second, when significant aspects of an anonymous tip are independently corroborated by the police, the inference arises that the anonymous informant is telling the truth about the allegations of criminal activity. Under this principle, police who have corroborated significant aspects of a tip are allowed the reasona-

142

ble inference under the circumstances that if an inform-
ant is correct as to these significant aspects, he or she is
more probably than not correct as to the ultimate fact of
criminal activity.[5]

The information given by the anonymous informant
in the case now before us was detailed and included the
informant's having been with the defendant that day
and having seen the cocaine in the defendant's posses-
sion. All of the innocent, non-inculpatory facts given by
the informant proved to be true as verified personally
through police observation and included verification of
future actions of the defendant. Verification of such
facts under the totality of the circumstances justified the
stop of this defendant's vehicle as one based on reasona-
ble suspicion that the defendant was involved in an
ongoing narcotics offense.

The defendant does not argue that if the investiga-
tory stop were reasonable, the police had no reason to
order him out of the car and pat him down for weapons.
Indeed, the United States Supreme Court has recognized
the potential danger to police in approaching persons in
cars and sanctions removal of occupants from their vehi-
cles in even routine traffic stops. *See Pennsylvania v.
Mimms,* 434 U.S. 106, 110 (1977).

Likewise, under the totality of the circumstances
known to the officers at the time of the stop, we con-

---

[5]By stating these principles, however, we do not attempt to
assign a definitive number of details or list the types of detail that
would give rise to reasonable suspicion under these circum-
stances. The analysis of reasonableness of an officer's reliance
upon the corroborated, innocent details of an anonymous tip is
necessarily governed by the unique facts and circumstances of the
given case.

clude that it was reasonable for them to pat the defendant down for weapons. *See Terry,* 392 U.S. at 27–29; *State v. Williamson,* 113 Wis. 2d 389, 402–04, 335 N.W.2d 814 (1983). The officers were approaching the car at night. Based on the tip, they considered the situation to be a high risk felony stop. Although the anonymous tipster did not indicate that the defendant would be armed, he did indicate that the defendant had a prior drug related conviction. Several cases have found that drug dealers and weapons go hand in hand, thus warranting a *Terry* frisk for weapons. *See United States v. Pajari,* 715 F.2d 1378 (8th Cir. 1983); *United States v. Post,* 607 F.2d 847 (9th Cir. 1979); *United States v. Oates,* 560 F.2d 45 (2d Cir. 1977). Under the totality of the circumstances, we conclude that the anonymous tip in this case and the verification by police observation of its innocent details provided police with reasonable suspicion to not only make an investigative stop of the defendant's vehicle, but also to order him out of the vehicle, and to pat him down for weapons.

The second issue requires review of whether the police officer who conducted the pat-down of the defendant had probable cause to conduct a search of the defendant's person after the pat-down revealed no obvious weapons. This issue is highly factual in nature and arises out of alleged confusion in Police Officer Larson's testimony at the suppression hearing.

The facts relevant to this issue, as adduced through testimony at the suppression hearing, are as follows. After the defendant's car was stopped, Officer Kathy Larson and an Officer Daly ordered the defendant out of the car. The defendant exited the car and stood facing it with his hands on the hood as ordered. Officer Daly then proceeded to conduct a pat-down of the left side of the defendant while Officer Larson patted down his right

side. During the pat-down, Officer Daly also spoke to the defendant in an attempt to calm him down. The defendant was then turned to face Officer Larson at which time Larson reached into the defendant's right front pants pocket and pulled out a baggie containing smaller baggies filled with a white powdery substance. Officer Larson then proceeded to search other pockets on the defendant's person and found more such baggies.

On direct examination, Officer Larson testified that during the pat-down she became aware of an object in the defendant's right front pants pocket. She stated that in patting down his pants, she found an object in his pants pocket. On cross-examination, the officer then gave the following testimony, the contents of which causes a dispute:

> Q: When [defendant] got out of the car, did you do an immediate pat down of him?
> A. Yes I did.
> Q. Did you discover anything during this pat down, this search?
> A. No.
> Q. Now that search is to determine any sort of obvious weapon or contraband on his body, is that correct?
> A. That is correct.
> Q. It is for your safety and protection basically?
> A. Mine and the public's.
> Q. Yours and the public's?
> A. Yes.

According to the defendant, Officer Larson's testimony on cross-examination to the effect that she discovered nothing during the pat-down stands in direct contradiction to the state's claim that the officer was aware of the baggies of cocaine during the pat-down so that she

then had probable cause to arrest and search the defendant's pockets for the contraband. Because nothing was arguably "discovered" during the investigative pat-down, the defendant argues that the subsequent search was unlawful and the fruits of the search, the cocaine, must therefore be suppressed.

The state contends that Officer Larson conducted a proper pat-down of the defendant and that her testimony is consistent in that she felt no weapons but was aware of an object in the defendant's right hand pants pocket. As maintained by the state, the tactile sensation experienced during the pat-down along with the observation that the defendant was agitated and the knowledge that the defendant was a suspected drug trafficker gave Officer Larson probable cause to make a search of the contents of the pants pocket.

Although Officer Larson's testimony appears to be equivocal, we conclude that the sum of all testimony relevant to this issue indicates that Officer Larson conducted a proper *Terry* pat-down. During the pat-down she sensed an object that was not a weapon but which, coupled with the defendant's agitation and her knowledge of the circumstances, led her to have probable cause to believe the object was illegal drugs thus justifying a search into the defendant's pockets.

Much is made of Officer Larson's having answered "no" when asked on cross-examination whether she "discovered" anything during the pat-down of the defendant. Rather than read this answer as inconsistent with her testimony on direct examination, we read this answer in light of all testimony as confirming the fact that the investigative pat-down was properly executed. We do not doubt that Officer Larson has been trained and is cognizant of the procedure of an investigative pat-down in that it involves only a search that is carefully

limited to a pat-down of the outer clothing of a suspect in order to discover weapons. *See Terry,* 392 U.S. at 30; *State v. Washington,* 134 Wis. 2d 108, 121, 396 N.W.2d 156 (1986). Thus, when Officer Larson stated she discovered nothing during the pat-down, she answered truthfully; she did not discover a weapon. When she further answered that the pat-down was effectuated for her safety and the public's she clearly articulated the purpose enunciated by the United States Supreme Court which justified the *Terry* pat-down for weapons. *See Terry,* 392 U.S. at 29; *Washington,* 134 Wis. 2d at 121. We know of no cases from the United States Supreme Court or this court which expand the scope of a *Terry* pat-down beyond a limited search for weapons to include other "contraband." Therefore, we conclude that any inconsistency in Officer Larson's testimony results from cross-examination questioning which misstates the scope of a *Terry* pat-down. The plain language of *Terry* and its progeny do not sanction the pat-down as an evidentiary search.

Further, the conclusion that Officer Larson properly executed the pat-down and did not simply search through the defendant's pockets at that time is verified by the defendant's own testimony:

> I opened the door, stepped out, and I was immediately told to put my hands on the top of the car which I did, and the officer frisked me down, patted me down around the neck, down the thighs, and ankles, and up around my back, under my arms, down the sleeves, and what not, and then I was handcuffed.

When asked whether anything was taken from his pockets during the pat-down, the defendant replied, "nothing."

Officer Larson did, however, indicate that she had sensed an object that was not a weapon in the defendant's right front pants pocket during the pat-down. As one commentator has stated:

> Assuming the object discovered in the pat-down does not feel like a weapon, this only means that a further search may not be justified under a *Terry* analysis. There remains the possibility that the feel of the object, together with other suspicious circumstances, will amount to probable cause that the object is contraband or some other item subject to seizure, in which case there may be a further search based upon that probable cause.

3 W. LaFave, *Search and Seizure,* sec. 9.4(c) at 524 (2d ed. 1987).

Probable cause requires that the police officer have facts and circumstances within his or her knowledge sufficient to warrant a reasonable person to conclude that the defendant has committed or is in the process of committing an offense. *See State v. Drogsvold,* 104 Wis. 2d 247, 254, 311 N.W.2d 243 (Ct. App. 1981). The information available to the officer must lead a reasonable police officer to believe that "guilt is more than a possibility." *State v. Paszek,* 50 Wis. 2d 619, 625, 184 N.W.2d 836 (1971). Probable cause includes the "totality of the circumstances" within the officer's knowledge at the time, though the " 'evidence need not reach the level of proof beyond a reasonable doubt or even [show] that guilt is more likely than not.' " *State v. Nordness,* 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986). Although Officer Larson gave no testimony specifically describing on record how the "object" felt, under the totality of the circumstances in this case, which included knowing that

the situation was considered a high risk felony stop, that the defendant was a suspected drug trafficker, and that the defendant was agitated during the pat-down, we conclude that a reasonable police officer would believe that there was a high probability that the object was an illegal substance.

In that probable cause was gained during a protective pat-down when the police officer experienced the sensation of an object that was not believed to be a weapon, this case is on all fours with our analysis of the plain view doctrine in *Washington,* 134 Wis. 2d at 121–22. Here, Officer Larson had prior justification for being in the position from which the plain view discovery was made.

The evidence was in plain view in that it was realized through Officer Larson's sense of touch. In *Washington,* 134 Wis. 2d at 121–22, this court stated: "Evidence in plain view is not restricted to items which can only be seen, but rather includes the realization of items or events to all of the human senses, smell, sight, touch, hearing and taste."

The evidence was inadvertently discovered during a pat-down for weapons.[6] Even though the officer knew the defendant was a suspected drug trafficker, there was no reason to believe the officer was aware of the location

[6]In *Horton v. California,* — U.S. —, 58 U.S.L.W. 4694, 4695 (1990), the United States Supreme Court held that although inadvertence is a characteristic of most legitimate plain view seizures, it is not a condition necessary to validate a warrantless seizure of evidence under the plain view doctrine. Thus, under our analysis of *Washington,* even if Officer Larson fully expected from past experience that (1) baggies of cocaine would likely be secreted on the defendant's person and (2) these baggies would become apparent to her sense of touch, the validity of the seizure of the baggies would still be valid.

of the suspected drugs at the time the pat-down was initiated or knew that the drugs would be hidden on the defendant's person. "Though a pat-down provides no justification to search for evidence of a crime, it does not mean that the police must ignore evidence of a crime which is inadvertently discovered." *Id.* at 123.

Finally, the officer's knowledge provided the proba-ble cause to believe the object was probably connected to criminal activity. Thus, the subsequent search into the defendant's right front pants pocket was reasonable. The illegal contents allowed further search into the defen-dant's other pockets, and we conclude that the illegal substances seized were properly admitted into evidence.

*By the Court.*—The order of the circuit court for La Crosse county is affirmed.