STATE of Wisconsin, Plaintiff-Appellant,†

v.

Lawrence A. WILLIAMS, Defendant-Respondent.
[Case No. 01–0463–CR.]

STATE of Wisconsin, Plaintiff-Appellant†,

v.

Antwon C. MATHEWS, Defendant-Respondent.
[Case No. 01–0464–CR.]

Court of Appeals

*Nos. 01–0463–CR, 01–0464–CR. Submitted on briefs August 27, 2001.—Decided September 25, 2001.*

2001 WI App 249

(Also reported in 635 N.W.2d 869.)

† Petition to review granted 12-17-01.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Stephen W. Kleinmaier*, assistant attorney general.

On behalf of the defendant-respondent, Lawrence A. Williams, the cause was submitted on the brief of *Carl T. Bahnson*, Altoona.

On behalf of the defendant-respondent, Antwon C. Mathews, the cause was submitted on the brief of *Peter J. Thompson*, Eau Claire.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. The State appeals orders suppressing evidence derived from an automobile search. State trooper Jame s Fetherston stopped Lawrence Williams for speeding and, after issuing a warning ticket, questioned Williams and asked for permission to search the car. Williams consented. The issue is whether Williams was seized under the Fourth Amendment when he was questioned and consented to the search. The trial court held that Williams had been seized and, as a result, his consent to search was invalid. We agree and affirm.

## BACKGROUND

¶ 2.   At approximately 2:30 a.m. on June 7, 2000, Fetherston stopped a car driven by Williams on Interstate 94.[1] Antwon Mathews was a passenger in the car. With his squad car's emergency lights on, Fetherston approached the driver's window and informed Williams that he had been stopped for speeding. In response to Fetherston's questions, Williams stated that he and Mathews were on their way to Chicago from St. Paul. Williams produced a valid driver's license and a rental agreement for the car. He did not know who had rented the car, but Mathews stated that his uncle was the renter.

¶ 3.   Fetherston told Williams to "sit tight." Fetherston returned to his squad car and called for back up, stating that he had "a Badger going."[2] He then turned off his flashing emergency lights. Several minutes later, deputy John Staber arrived in his squad car with his emergency lights on.

¶ 4.   Fetherston again approached the driver's door. Staber approached the passenger door and stood facing the passenger window with his hands on his belt. Fetherston told Williams to exit the car, and both he and Williams moved to the rear of the car. Staber stayed by the passenger side. Fetherston issued Williams a warning for speeding.

---

[1] We have viewed Exhibit 3, which is a videotape of the traffic stop recorded from a camera in Fetherston's squad car.

[2] Fetherston testified at the suppression hearing that "Badger stop" was a term no longer used by the state patrol, but which denotes an interdiction stop where the trooper attempts to obtain the driver's consent to search the car for possible criminal activity.

¶ 5. Fetherston returned Williams' license and the rental agreement and then shook hands with Williams. As the two shook hands, Fetherston stated, "We'll let you get on your way then. Take care. We'll see ya."

¶ 6. Williams and Fetherston turned to walk back to their respective vehicles. Fetherston, barely taking one step, swiveled back toward Williams and, in a civil but commanding tone, asked, "Hey Lawrence, there's no guns in the car is there?" Williams turned, walked back toward Fetherston, and stated, "No, sir." Fetherston then asked, "Any knives?" Williams stated, "No, sir." Fetherston continued, "How about any drugs? You guys got any drugs in there?" Williams again said no. Fetherston asked, "Any large amounts of money? You guys not bringing back any big quantities of money?" Williams said no. Finally, Fetherston asked, "May I search your car just to be sure any of those items I mentioned are not in there?" Williams said, "Yes, sir." The questioning took fewer than fifteen seconds.

¶ 7. During the search, Fetherston found a gun and heroin. Both Williams and Mathews were arrested and charged with possession of heroin with intent to deliver and carrying a concealed weapon, contrary to Wis. Stat. §§ 961.41(1m)(d)3 and 941.23.

¶ 8. Williams and Mathews moved to suppress the evidence derived from the search of the car. The circuit court concluded that the basis for the traffic stop ended when Williams was issued the warning ticket. It further concluded that a reasonable person in Williams' position would have felt compelled to remain and respond to Fetherston's questions. As a result, Fetherston needed reasonable suspicion in order to detain Williams for the questioning. The court held that because Fetherston did not have reasonable suspicion, Williams was

illegally detained when he gave permission to search the car. The court granted the suppression motion.

## STANDARD OF REVIEW

■■■

¶ 9.   In reviewing a circuit court order concerning the suppression of evidence, we will uphold findings of fact unless they are clearly erroneous. *State v. Richardson*, 156 Wis. 2d 128, 137, 456 N.W.2d 830 (1990). However, whether the circuit court's findings of fact pass statutory or constitutional muster is a question of law that we review independently. *Id.* at 137–38.

## DISCUSSION

■■

¶ 10.   The issue on appeal is whether Williams was seized at the time Fetherston asked him if he had guns, knives, drugs or large quantities of cash in the car. It is undisputed that the initial seizure of Williams ended when Fetherston returned Williams' license. It is also undisputed that Fetherston did not have reasonable suspicion justifying a seizure of Williams after the traffic stop had ended. In fact, the State concedes that if Williams was seized after the completion of the traffic stop, then Williams' consent to search the car was invalid. *See State v. Bermudez*, 221 Wis. 2d 338, 353–54, 585 N.W.2d 628 (Ct. App. 1998) (citations omitted).

¶ 11.   However, the State argues that Williams was not seized when Fetherston began questioning him. According to the State, Williams' consent to search the car occurred as a result of a consensual encounter. Because the encounter was consensual, the State concludes the consent and subsequent search of the car were valid under the Fourth Amendment.

¶ 12.  A consensual encounter occurs when "the person to whom questions are put remains free to disregard the questions and walk away. . . ." *United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980). A seizure under the Fourth Amendment occurs "when an officer, by means of physical force or a show of authority, restrains a person's liberty." *State v. Harris*, 206 Wis. 2d 243, 253, 557 N.W.2d 245 (1996) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

¶ 13.  The totality of the circumstances must be considered to determine whether the police conveyed a message to a citizen that compliance with police questioning was required. *See Florida v. Bostick*, 501 U.S. 429, 437 (1991). "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " *Id.* (citation omitted). Examples of circumstances that might indicate a seizure would be the threatening presence of several officers, the display of a weapon by an officer, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Mendenhall*, 446 U.S. at 554.

¶ 14.  We conclude that the trial court properly found that a reasonable person in Williams' position would have believed that he or she was not free to ignore Fetherston's questioning and to leave. Admittedly, Fetherston told Williams after issuing the warning, "We'll let you get on your way then." However, almost without missing a beat, this was followed by assertive questioning, nearly in the nature of an accusation:  "Hey Lawrence, there's no guns in the car

is there?" Under the circumstances, the question suggested that a reply was required.

¶ 15. In addition to the form of the question, Fetherston changed his tone of voice. His tone became abrupt and distinct from the friendlier tone that he used previously. He also spoke in a slightly higher volume. When Williams turned to deny the question, he was again face-to-face with Fetherston. In fewer than fifteen seconds, Fetherston asked Williams six questions, ending with, "May I search your car. . . ."

¶ 16. Also, during the questioning, deputy Staber's emergency lights were flashing. Moreover, while Staber had backed away from the car when Fetherston returned Williams' license, Staber resumed his position just outside of and facing the passenger window when the questioning started. At all times Staber's hands were on his belt near his weapon.

¶ 17. The questioning occurred after 2:30 in the morning on the shoulder of a rural interstate highway. Williams was standing outside his vehicle, facing the flashing emergency lights. These are not the kind of circumstances in which a citizen would feel free to ignore a police officer's questions.

¶ 18. Finally, we note that the questioning started almost immediately after the warning ticket was issued. The State would have us conclude that a reasonable person should be able to tell that the legal detention was concluded and that he or she was now free to disregard the trooper's questions. We disagree. A reasonable person would not have detected the nearly seamless transition from the conclusion of the traffic stop to the questioning.

¶ 19. Our holding is not based on any one factor. We are persuaded by the totality of the circumstances: time of night; isolated and rural location; standing

outside of the vehicle; flashing emergency lights; initial detention; questions starting almost immediately after the initial detention; tone, volume and nature of the questions; and presence and stance of the second law enforcement officer. All of these factors lead us to conclude that a reasonable person under the circumstances would not have felt free to disregard the questions and walk away.

¶ 20.   The State concedes that if Williams was seized, his consent to search was invalid and the evidence should have been suppressed. Because we hold that Williams was seized, we therefore conclude that the circuit court properly granted the suppression motion.

*By the Court.*—Orders affirmed.