HRUZ, J.[1]
¶1 James Mueller appeals a judgment, entered following a jury trial, convicting him of fourth-offense operating a motor vehicle while under the influence of intoxicants or drugs. Mueller argues the circuit court erred by denying his motion to suppress evidence obtained after a traffic stop, contending the police officer lacked reasonable suspicion to extend the traffic stop and lacked probable cause to arrest Mueller. Mueller also challenges the sufficiency of the evidence upon which the jury found him guilty. We affirm.
BACKGROUND
¶2 Around 4:10 p.m. on the day at issue, officer Ross Austin noticed Mueller stopped in the furthest left lane of traffic, approximately 150 feet from an intersection. The traffic light facing Mueller was green, and there were no vehicles between Mueller and the intersection. Austin passed Mueller's vehicle and turned around. On his second pass, Austin noticed Mueller's vehicle had moved forward approximately 75 feet closer to the intersection and into the right-turn lane, but it was again stationary in the turn lane while having a green light. Austin observed that other vehicles driving toward the intersection had to drive around Mueller's vehicle in order to continue forward. Austin activated his overhead emergency lights and contacted Mueller.
¶3 When Austin approached the vehicle, Austin observed Mueller with his head facing down, writing something onto a piece of paper. Once Mueller realized Austin had approached Mueller's vehicle, he put the paper away and informed Austin that he was stopped in the turn lane because he was waiting for the light to turn green. Austin informed Mueller that the light was currently green and vehicles were passing around him. Mueller thanked Austin and then proceeded to drive forward, although at this point the traffic light had changed to red. Austin ordered Mueller to stop, and Mueller complied.
¶4 After Mueller denied having consumed any alcohol that day, Austin retrieved Mueller's identification in order to run a background check in his squad car. While he ran the background check, Austin requested backup and called a different officer by phone. During that phone call, Austin told the officer that "something feels off." Austin returned to Mueller after having learned that he had prior convictions for operating while intoxicated, and Austin asked Mueller if he had been using any illegal drugs. Mueller denied doing so. Upon Austin's request, Mueller then agreed to perform field sobriety tests.
¶5 Before beginning the tests, but after Mueller had exited his vehicle, Austin asked Mueller if he had taken any prescription medications. Mueller replied that he had taken his prescribed clonazepam, which Austin knew to be a central nervous system depressant.[2] Additionally, Mueller informed Austin that he had recently injured his ankle and had back problems. Mueller then performed the requested field sobriety tests. He exhibited clues of impairment on the walk-and-turn and the one-leg-stand tests.
¶6 Austin placed Mueller under arrest, suspecting Mueller had been operating his vehicle while impaired by his prescription medication. The State subsequently charged Mueller with fourth-offense operating a motor vehicle while under the influence of intoxicants or drugs, contrary to WIS. STAT. §§ 346.63(1)(a) and 346.65(2)(am)4.
¶7 Mueller moved to suppress evidence obtained from the traffic stop, arguing that Austin lacked reasonable suspicion to extend the traffic stop to conduct field sobriety tests, and that Austin lacked probable cause to arrest him. Austin was the only witness to testify at the suppression hearing. Following his testimony, the circuit court denied Mueller's motion. The court then entered a judgment of conviction against Mueller after a jury found him guilty. Mueller now appeals. Additional facts are discussed below.
DISCUSSION
¶8 Mueller raises two issues on appeal: (1) did the circuit court err by denying his suppression motion because Austin violated Mueller's Fourth Amendment right against unreasonable seizures; and (2) did the State present sufficient evidence at his trial for the jury to convict him of operating a motor vehicle while under the influence of prescription drugs. Mueller correctly notes that we would not need to reach the merits of his Fourth Amendment argument if we were to conclude the State presented insufficient evidence at trial. However, because we conclude the State presented sufficient evidence at trial, we address his arguments in the order in which they were presented to the circuit court.
I. The circuit court did not err by denying Mueller's suppression motion.
¶9 Mueller concedes Austin had a reasonable articulable basis to stop his vehicle. However, he argues that Austin lacked reasonable suspicion to justify the stop's extension in order to conduct field sobriety tests. Mueller also asserts that he was arrested without probable cause. The State responds that Austin had reasonable suspicion to conduct field sobriety tests under the totality of the circumstances.[3] It also argues that probable cause existed to arrest Mueller because he exhibited odd behavior by stopping his vehicle in the middle of traffic, he admitted to using prescription medication before driving, and he performed poorly on the field sobriety tests. We agree with the State.
¶10 We apply a two-step standard of review when addressing a challenge to a circuit court's ruling on a motion to suppress evidence based on a Fourth Amendment violation. See State v. Martin , 2012 WI 96, ¶28, 343 Wis. 2d 278, 816 N.W.2d 270. We will uphold the circuit court's factual findings unless they are clearly erroneous. State v. Eskridge , 2002 WI App 158, ¶9, 256 Wis. 2d 314, 647 N.W.2d 434. We independently decide, however, whether the facts establish that a particular search or seizure occurred and, if so, whether it violated constitutional standards. See State v. Richardson , 156 Wis. 2d 128, 137-38, 456 N.W.2d 830 (1990). Where an unlawful stop or other unlawful detention occurs, the remedy is to suppress the evidence it produced. See State v. Washington , 2005 WI App 123, ¶10, 284 Wis. 2d 456, 700 N.W.2d 305.
¶11 The Fourth Amendment of the United States Constitution and article I, section 11 of the Wisconsin Constitution afford individuals similar protections against unreasonable searches and seizures. See State v. Young , 2006 WI 98, ¶¶18-19, 294 Wis. 2d 1, 717 N.W.2d 729. The United States Supreme Court and our supreme court have recognized two types of seizures-an investigatory stop and a "full-blown arrest." Id. , ¶¶20, 22. Both such seizures are at issue in this appeal.
A. Austin had reasonable suspicion to ask Mueller to exit the vehicle and then to perform field sobriety tests.
¶12 An investigatory stop requires an officer to have, at a minimum, reasonable suspicion that a wrongful act has been committed, is being committed, or is about to be committed. See id. , ¶20. An officer must be able to point to "specific and articulable facts" that wrongful activity might be afoot, and he or she may draw upon reasonable inferences from those facts to justify the stop. See id. , ¶21. The determination of reasonableness is a common-sense test that is based on the totality of the facts and circumstances. State v. Post , 2007 WI 60, ¶13, 301 Wis. 2d 1, 733 N.W.2d 634.
¶13 A traffic stop may last only for the amount of time that is reasonably necessary to complete its purpose. State v. Rose , 2018 WI App 5, ¶16, 379 Wis. 2d 664, 907 N.W.2d 463 (2017). A traffic stop's purpose includes " 'determining whether to issue a traffic ticket' and the ordinary inquiries incident to the stop." State v. Smith , 2018 WI 2, ¶10, 379 Wis. 2d 86, 905 N.W.2d 352 (citation omitted). An officer is permitted to extend a traffic stop when he or she discovers additional reasonable suspicion during the ordinary inquiries attributed to the traffic stop's original purpose. See id. , ¶28.
¶14 The State correctly explains that the investigatory stop's purpose changed throughout Austin's interaction with Mueller. It started with a concern over a motorist having a disabled vehicle in traffic. By the time Austin asked Mueller to exit his vehicle, Austin had specific, articulable facts to believe that Mueller was driving impaired. We conclude Mueller's twice allowing his vehicle to remain stopped in a lane of traffic when it was not disabled, his inability to recognize that he had the green light right-of-way multiple times, his decision to take his eyes off the road to write something down while other vehicles had to drive around him, his otherwise appearing distracted, his driving away from an officer during questioning-while the traffic light was then red-together with his history of prior operating while under the influence offenses, are facts that, when taken together, provided Austin with reasonable suspicion that Mueller might be under the influence of some sort of intoxicant or other drug, contrary to WIS. STAT. § 346.36(1)(a), thereby warranting the further "incremental intrusion" into Mueller's liberty to conduct field sobriety tests. See State v. Arias , 2008 WI 84, ¶¶33, 38, 311 Wis. 2d 358, 752 N.W.2d 748. Moreover, Austin was not required to accept Mueller's denial of having used alcohol or illegal drugs. See State v. Hogan , 2015 WI 76, ¶36, 364 Wis. 2d 167, 868 N.W.2d 124.
¶15 Mueller's arguments for why Austin lacked reasonable suspicion to extend the traffic stop are without merit. Mueller first argues that Austin impermissibly decided to extend the traffic stop because he had made that decision both before learning about Mueller's prescription drug use and, in part, based on his feeling that "something feels off." However, the timing of when Austin learned about Mueller's prescription drug use is not dispositive because, as just explained, we conclude Austin had already obtained the requisite suspicion to conduct field sobriety tests based on the totality of the other facts and circumstances surrounding the traffic stop.[4] Similarly, we also reject any assertion by Mueller that Austin impermissibly extended the traffic stop only because "something feels off,"-i.e., based on a hunch. See Post , 301 Wis. 2d 1, ¶10. That comment cannot be taken in isolation, devoid of its relation to the numerous "specific and articulable facts" discussed above that gave rise to a reasonable suspicion that Mueller was operating his motor vehicle while impaired.
¶16 Additionally, Mueller asserts that Austin lacked specific, articulable facts to suspect he was incapable of driving safely due to the influence of his prescription drugs. We reject this argument. As an initial matter, Mueller cites no authority-nor are we aware of any-that for Austin to extend his initial, lawful stop to conduct field sobriety tests, he must have had reasonable suspicion of Mueller having committed the particular crime with which he was ultimately charged-i.e., the offense of operating a vehicle under the influence of a prescription drug such that he was rendered "incapable of safely driving." See WIS. STAT. § 346.63(1)(a). All Austin needed was reasonable suspicion that Mueller was committing some type of wrongful activity, which, here, could include driving under the influence of alcohol or illegal drugs.
¶17 Furthermore, Mueller fails to analyze the situation under the totality of the circumstances. Instead, he focuses on facts or circumstances that were absent, such as Austin not observing Mueller driving recklessly, slurring his speech, or appearing confused. We assess whether reasonable suspicion exists based upon the accumulation of facts that actually occurred. See Post , 301 Wis. 2d 1, ¶10 ("The officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the intrusion of the stop.") (citation omitted). As explained above, at the time Austin ordered Mueller to exit his vehicle, Austin had a reasonable suspicion that Mueller was under the influence of a drug or intoxicant, based on the totality of the circumstances.
B. Austin had probable cause to arrest Mueller.
¶18 An arrest is a more permanent detention than an investigatory stop and is not constitutionally justified unless an officer has probable cause. Young , 294 Wis. 2d 1, ¶22. Probable cause requires officers to have sufficient knowledge at the time of the arrest that would lead them to reasonably believe that the defendant "probably committed or was committing a crime." Id. (citation omitted). Probable cause does not require proof "beyond a reasonable doubt or even that guilt is more likely than not." Id. (citation omitted). Similar to reasonable suspicion, probable cause is an objective standard that is based on the totality of the facts and circumstances. See Rose , 379 Wis. 2d 664, ¶15.
¶19 We agree with the State that Austin had probable cause to arrest Mueller based on the totality of the circumstances. Mueller's behavior prior to the field sobriety tests, the indicators of his impairment during the field sobriety tests, and his admission to using a prescription drug known to affect one's physical abilities gave Austin probable cause to believe Mueller had been operating his vehicle under the influence. Moreover, we disagree with Mueller's assertions that he did not exhibit "any unsafe driving conduct" and "was not driving dangerously." These statements ignore the fact that Mueller twice stopped his motor vehicle in the middle of traffic while having the right-of-way, and incorrectly presume that conduct did not constitute a dangerous act while "driving."
¶20 Mueller argues Austin lacked probable cause in two separate ways. First, he contends Austin's observations from the field sobriety tests "were of limited probative value" for drug impairment because the tests were designed to detect impairment from alcohol. For authority, Mueller cites City of West Bend v. Wilkens , 2005 WI App 36, 278 Wis. 2d 643, 693 N.W.2d 324. We disagree with Mueller's reliance on Wilkens . That case addressed the admissibility of field sobriety tests as reliable scientific evidence and whether a witness must be qualified as an expert to opine on observations from field sobriety tests. See id. , ¶¶12, 15. Wilkens neither explicitly nor implicitly discussed any need for different field sobriety tests in cases where an officer suspects impairment due to the use of drugs rather than alcohol. To the contrary, we concluded that field sobriety tests give an officer an opportunity to look for indicia of general impairment, such as whether an individual can follow directions or "divide his or her attention and exhibit fine motor skills." See id. , ¶17. We therefore reject Mueller's contention that Austin's observations during the field sobriety tests were limited in probative value, such that it was unreasonable for Austin to rely on them. Furthermore, probable cause is a totality of the circumstances test; Austin relied on other facts, in addition to the results of the field sobriety tests, which gave rise to probable cause.
¶21 Second, Mueller argues that Austin lacked knowledge that Mueller was impaired to the extent that he was "incapable of safely driving," referring to the State's burden of proof for when an individual is charged with operating under the influence of a drug other than a controlled substance under WIS. STAT. § 346.63(1)(a). Yet, Mueller's argument is belied by the facts. The totality of the circumstances-specifically, Mueller causing other vehicles to drive around him on an active roadway because of his inability to recognize a green light, and his performance on the field sobriety tests-reasonably permitted Austin to believe that Mueller was incapable of driving safely, because of his prescription drug use, under the standards for probable cause necessary for an arrest.
II. Sufficient evidence was presented at trial to support the jury's verdict.
¶22 Mueller argues the State presented insufficient evidence at his trial for the jury to find him guilty of unlawfully operating a motor vehicle under the influence of prescription drugs. He asserts two reasons for why the State failed to meet its evidentiary burden of showing that the drugs influenced him to a degree that rendered him incapable of driving safely. First, he again contends his performance on the field sobriety tests is of limited probative value. Second, he asserts that his conduct at the traffic stop "did not comport with the evidence the [S]tate presented regarding the general side effects" of the prescription drugs in his system. While we agree with Mueller that the standard of impairment is higher in cases involving the use of prescription drugs than in those involving alcohol, we disagree that the jury in this case could not reasonably infer that Mueller was so impaired.
¶23 In reviewing claims attacking the sufficiency of the evidence to support a jury conviction, we may not substitute our own judgment for that of the jury "unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." State v. Poellinger , 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). When more than one inference can reasonably be drawn from the evidence, we must follow the inference that supports the jury's verdict. Id. at 506-07. We cannot overturn the jury's verdict if any possibility exists that the jury "could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt," even if we might have come to a different conclusion. Id. at 507. In other words, we must uphold a conviction when the record shows "a bare modicum of evidence from which a reasonable jury could find guilt." State v. Sholar , 2018 WI 53, ¶45, 381 Wis. 2d 560, 912 N.W.2d 89.
¶24 It is the function of the jury "to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Poellinger , 153 Wis. 2d at 506. The sufficiency of the evidence standard "is the same in either a direct or circumstantial case," and "the rule that evidence must exclude every reasonable hypothesis of innocence does not mean that if any of the evidence brought forth at trial suggests innocence, the jury cannot find the defendant guilty." Id. at 501, 503. Within the bounds of reason, a jury can "reject evidence and testimony suggestive of innocence." Id. at 503.
A. Evidence relating to field sobriety tests
¶25 Mueller first argues that Austin's observations of Mueller's performance on the field sobriety tests "would not lead a jury to find him guilty beyond a reasonable doubt" because Austin did not observe impairment clues specifically designed to detect drug use. Mueller makes a number of arguments attacking the evidentiary value of field sobriety tests when they are used to assess impairment due to prescription drug use. For example, Mueller again asserts that, based on Wilkens , field sobriety test impairment clues are observational tools to assess alcohol impairment, and thus Austin's observations of Mueller "are of less evidentiary value without additional observed drug-specific clues to support a conclusion of impairment." Mueller also cites to Austin's testimony that a different officer at the scene, who, unlike Austin, was a "drug recognition expert," could have conducted additional tests that are specifically designed to detect drug impairment. However, all of Mueller's arguments relating to the field sobriety tests lack merit because they largely ignore our standard of review.
¶26 Mueller's arguments-while perhaps bases for a closing argument at trial-would require us, on this appeal, to reject reasonable inferences the jury made, which we cannot do.[5] See Poellinger , 153 Wis. 2d at 507. Mueller suggests the jury heard reasonable explanations for why it should discredit the impairment clues Austin observed, but this argument ignores the standards articulated in Poellinger . Even if there were reasonable inferences of innocence from the evidence, we are required to follow the inferences that support the jury's verdict. See id. at 506-07. The jury heard Austin testify that field sobriety tests can provide clues of impairment by drug use, not just alcohol. On the other hand, it also heard Austin testify that he was not a trained drug recognition expert and that some field sobriety tests-although not the ones used on Mueller-are designed specifically to detect impairment by drug use. That testimony does not eliminate the probative value of the tests used in this instance. Rather, that testimony plays a role in how the jury weighs the significance of the field sobriety tests actually used on Mueller in coming to its verdict. Moreover, Mueller makes no argument that the circuit court improperly instructed the jury. Accordingly, the evidence regarding the field sobriety tests, combined with other evidence, far surpasses the "bare modicum of evidence" threshold, such that a reasonable jury could have found Mueller guilty. See Sholar , 381 Wis. 2d 560, ¶45.
B. Mueller's conduct on the scene
¶27 Mueller next argues the State failed to prove impairment because his behavior during the traffic stop was inconsistent with the general side effects of the prescription drugs found in his system. The State called Michael Knutsen, a senior chemist at the Wisconsin State Laboratory of Hygiene, to testify as to the results of Mueller's blood test and the side effects of prescription drugs on the general population. Knutsen stated that Mueller's blood contained both clonazepam and zolpidem at sixteen nanograms per milliliter each. These levels were below the therapeutic range for each drug, respectively.[6]
¶28 However, Knutsen explained that combining the two drugs could increase their impairing effect, and he further opined that the drug levels found in Mueller's system could have caused the behavior he exhibited during the traffic stop and the field sobriety tests. Knutsen also testified that the side effects for clonazepam are similar to alcohol, in that an individual could experience impaired vision, difficulty scanning and tracking the road, impaired muscle coordination, and confusion. He further stated that zolpidem's side effects similarly could include dizziness, confusion, and decreased concentration. Knutsen conceded, however, that it was possible for some individuals not to be impaired if they had the same drug levels in their blood as Mueller did.
¶29 Mueller's arguments regarding the foregoing evidence again ignore our standard of review. Mueller asks us to reweigh the evidence adduced at trial and reject reasonable inferences the jury made from it. It is true that the jury heard testimony and argument suggesting that Mueller's poor performance on the field sobriety tests was not attributable to prescription drug use. Likewise, the jury also heard how age, gender and tolerance impact the way clonazepam and zolpidem affect an individual. However, the jury was within its province to reject those facts or give them little weight. See Poellinger , 153 Wis. 2d at 503. Between Austin's observations of Mueller on the scene and Knutsen's testimony regarding the side effects of clonazepam and zolpidem, we conclude the jury could have reasonably inferred that Mueller was impaired by those prescription drugs to the extent that he was incapable of driving safely.
¶30 In all, Mueller has not shown that the evidence introduced at trial was so lacking in probative value and force that the jury, acting reasonably, could not have found guilt beyond a reasonable doubt when the evidence is viewed most favorably to the State and his conviction. See id. at 507.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Mueller also had zolpidem, a central nervous system depressant used as a sedative for sleeping, in his system at that time. However, Austin was unaware of that fact during his contact with Mueller. The State learned that Mueller had zolpidem in his system at the time of the traffic stop only after Mueller's blood had been taken and analyzed following his arrest.

The State refers to Mueller as the "Appellant" throughout its response brief. We remind the State that reference should be made to a party's name, rather than by party designation, throughout a brief's argument section. See Wis. Stat. Rule 809.19(3)(a)2.

We do note, however, that once Austin learned of Mueller's prescription drug use, that knowledge certainly added to his reasonable suspicion to conduct the field sobriety tests.

Mueller misstates our standard of review on this issue in numerous instances. For example, Mueller claims that the State did not meet its evidentiary burden because his performance on the field sobriety tests did not "eliminate all reasonable hypotheses of innocence to lead a jury to find him guilty beyond a reasonable doubt." The hypothesis of innocence standard applies to a circuit court or a jury when they are tasked with finding facts. State v. Poellinger , 153 Wis. 2d 493, 505-06, 451 N.W.2d 752 (1990). In fact, Poellinger makes clear that the hypothesis of innocence standard is not applicable when appellate courts review sufficiency of the evidence claims. Id. at 506 ("To the extent that prior decisions of [the Wisconsin Supreme Court] have suggested that the hypothesis of innocence rule is in any way applicable in reviewing the sufficiency of the evidence to support a conviction, we disapprove of those decisions and take the opportunity presented in this case to clearly state that it is not."). We find Mueller's persistent use of the hypothesis of innocence standard curious in light of his citation to Poellinger in other instances, especially when he makes no argument that the circuit court improperly instructed the jury.

The therapeutic range is the amount expected to be in an individual's body if taken as prescribed.