STATE of Wisconsin, Plaintiff-Respondent,

v.

Tartorius ALLEN, Defendant-Appellant.†

Court of Appeals

*No. 98–1690–CR. Submitted on briefs March 8, 1999.—Decided March 24, 1999.*

(Also reported in 593 N.W.2d 504.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven D. Phillips*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general and *Stephen W. Kleinmaier,* assistant attorney general.

Before Brown, Anderson and Ziegler,[1] JJ.

ANDERSON, J. Tartorius Allen appeals the refusal of the trial court to suppress evidence the police obtained when they stopped and frisked him. Allen maintains that the officers did not have a reasonable suspicion that he was engaged in drug activity or that he was armed and dangerous. We conclude that Allen's actions, as observed by the officers, combine to supply reasonable suspicion to support the stop and frisk. Therefore, we affirm.

After numerous citizen and aldermanic complaints about drug activity, gangs, weapon violations and gunshots, the City of Racine Police Department put the 800 and 900 blocks of Hamilton Street under surveillance. On the evening of September 21, 1996, Inspector William Warmington, using binoculars and a 300-millimeter zoom lens, was watching the area. Warmington saw a car pull over to the curb in the 800 block of Hamilton and two men approach the car. One of the two men entered the car and got out in about one minute, and then the car drove away. Warmington saw the clothing, but not the face, of the man who got into the car. When the man was in the car, Warmington could not see into the car, and he did not see any exchanges that may have happened inside the car.

After the car left, the two men hung around the front yards in the 800 block of Hamilton for five to ten minutes before walking east and then south toward a pay phone. When the two men were in the yards and on the sidewalk, Warmington did not see them exchange anything. Warmington radioed his observations to Ser-

---

[1] Circuit Judge Annette Ziegler is sitting by special assignment pursuant to the Judicial Exchange Program.

geant David Boldus who was on patrol in an unmarked squad car.

Boldus stopped his undercover vehicle alongside the two men when they were next to a pay phone in the 1100 block of Douglas Avenue. Boldus got out of his car, identified himself as a police officer and directed the two men to put their hands on the side of his car. While patting down Allen for weapons, Boldus felt a soft baggy in a pocket, and based on his experience, Boldus believed that the baggy contained a controlled substance. Boldus removed the baggy which contained a substance he believed to be marijuana. He arrested and handcuffed Allen. While searching, Boldus found $338 in currency and a pager. Allen admitted to Boldus that the marijuana was for his own use.

Allen was charged with felony possession of THC, second offense, in violation of §§ 961.41(3g)(e) and 961.48, STATS. Allen brought a motion to suppress the evidence obtained from the stop and frisk. He raised several arguments before the trial court. First, he asserted that the officers did not have reasonable suspicion that he was engaged in criminal activity or that he was armed. Second, he argued that his admission that the marijuana was for personal use was the fruit of an illegal stop and frisk. Finally, he argued that Boldus lacked a sufficient basis for removing the baggy from his pocket.

The trial court denied the motion. The court reasoned that when the police department gets numerous complaints about drug activity in an area, it is its obligation to put the area under surveillance. The court was satisfied that the observations of the officers provided a reasonable suspicion that justified the stop and frisk. As a final point, the court held that for their own safety, officers have a right to frisk people they stop in

an "area of high crime and high incident of gunfire." Allen then entered a "no contest" plea to the charge and brought this appeal under § 971.31(10), STATS.

In this appeal, Allen contends that Warmington's observations fall short of providing reasonable suspicion for the stop. He argues that at the suppression hearing the State failed to prove that he was the individual who entered the car. He also argues that even if it is assumed that he was the one who got into the car, it is unreasonable to infer that he consummated a drug deal while in the car. Because the stop was not justified, Allen argues that, likewise, the frisk was not justified. In addition, even if the stop was justified, he contends that Boldus lacked reasonable suspicion to conduct a protective frisk.[2]

When we review a trial court's decision regarding a motion to suppress evidence, the court's findings of fact will be sustained unless they are contrary to the great weight and clear preponderance of the evidence. *See State v. Callaway*, 106 Wis. 2d 503, 511, 317 N.W.2d 428, 433 (1982). However, we independently examine the circumstances of the case to determine whether the constitutional requirements of reasonableness have been satisfied. *See id.*

In *Terry v. Ohio*, 392 U.S. 1, 22 (1968), the Supreme Court stated that "a police officer may in appropriate circumstances and in an appropriate man-

---

[2] Allen does not renew his argument that Boldus could not seize the baggy containing marijuana. "Though a pat-down provides no justification to search for evidence of a crime, it does not mean that the police must ignore evidence of a crime which is inadvertently discovered." *State v. Washington*, 134 Wis. 2d 108, 123, 396 N.W.2d 156, 162 (1986).

ner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." In order to execute a valid investigatory stop, *Terry* requires that a police officer reasonably suspect, in light of his or her experience, that some kind of criminal activity has taken or is taking place. *See State v. Richardson*, 156 Wis. 2d 128, 139, 456 N.W.2d 830, 834 (1990). "Such reasonable suspicion must be based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *Id.* (quoted source omitted). "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990).

> The question of what constitutes reasonableness is a common sense test. What would a reasonable police officer reasonably suspect in light of his or her training and experience. This common sense approach strikes a balance between individual privacy and the societal interest in allowing the police a reasonable scope of action in discharging their responsibility.
>
> The societal interest involved is, of course, that of effective crime prevention and detection consistent with constitutional means. It is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even

though there is no probable cause to make an arrest.

*State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681, 684 (1996) (citations omitted).

Allen maintains that because Warmington could not see the face of the man who entered the car, he was not able to identify Allen as that man. Because a positive identification could not be made, Allen argues that he may have simply been the companion to the man who entered the car. He reasons that status as a simple companion is important. According to Allen, there is no evidence to suggest that the companion was engaged in drug activity, and the fact that he was along with the other man did not give Boldus reasonable suspicion to frisk the other man and Allen. Allen disputes the court's conclusion that being in a high-crime area justifies the stop. Relying on *State v. Morgan*, 197 Wis. 2d 200, 212, 539 N.W.2d 887, 892 (1995), he attempts to make a case for the proposition that being in a high-crime area is not sufficiently suspicious behavior to justify a stop by law enforcement.

Relying upon *State v. Young*, 212 Wis. 2d 417, 569 N.W.2d 84 (Ct. App. 1997), Allen makes the argument that an activity which mirrors conduct that a large number of innocent citizens engage in every day is not sufficient to establish reasonable suspicion, even if that conduct occurs in a high-crime area. He states that it is not enough that the brief entry into a car, late at night in a known high-crime area, is consistent with a drug transaction. Allen asserts that without first-hand observation of a drug transaction, the officers did not have reasonable suspicion to stop him and the other male.

*Young* involved an officer who was involved in an early afternoon surveillance operation designed to

catch persons selling narcotics in a high-drug trafficking area. The officer was contacted by radio to look for and stop a "black male subject . . . [who] had just made short-term contact with another subject in that area." *Id.* at 420–21, 569 N.W.2d at 87. The officer observed Young and concluded that Young was the person being sought. He stopped Young, informed him that he had been seen either selling or buying drugs, and asked if he would consent to a search. Young complied and the search of his person yielded a small amount of marijuana and a pipe. *See id.* at 421, 569 N.W.2d at 87. The trial court held that the officer had reasonable suspicion to make the stop based upon the officer's training and experience because the term "short-term contact" could mean an exchange of money for drugs and because Young was in a high-crime area.

The court of appeals reversed. We noted that even though the law holds that Young's presence in an area known for drug trafficking is a permissible factor for an officer to take into account, mere presence in such an area will not suffice "standing alone." *See id.* at 427, 569 N.W.2d at 89. We then noted that while an officer may be trained in the area of drug enforcement, the meaning a trained officer gives to certain conduct on the street is only one factor to consider. *See id.* at 429, 569 N.W.2d at 90. We then concluded that a " 'short-term contact' " with another individual on a residential street is an "ordinary, everyday occurrence during daytime hours in a residential neighborhood." *Id.* The court observed that there was nothing in the record suggesting that this would not be the case in a high-crime neighborhood. Based on the sparse record and no further elucidation of what was observed on the street between Young and another individual, we felt compelled to reverse.

We conclude that *Young* is factually distinguishable. In *Young*, we observed that "stopping briefly on the street when meeting another person is an ordinary, everyday occurrence during daytime hours in a residential neighborhood." *Id.* And we commented that "[t]he conduct . . . considered suspicious, then, is conduct that large numbers of innocent citizens engage in every day for wholly innocent purposes, even in residential neighborhoods where drug trafficking occurs." *Id.* at 429–30, 569 N.W.2d at 90–91. At this point, we observe that hanging around late at night in a residential neighborhood, briefly getting into a car that stops and then remaining in the neighborhood for five to ten minutes after the car leaves is not an everyday occurrence. The conduct that Warmington and Boldus considered suspicious is not conduct that a large number of innocent citizens engage in every night for wholly innocent purposes either in crime-free areas or high-crime areas.

Determining whether there was reasonable suspicion requires us to consider the totality of the circumstances. Warmington testified that based on his training and experience, a person getting into a car for a short period of time was consistent with drug trafficking. In *Young,* we held that the training and experience of the officers is one factor to consider in the totality of the circumstances equation. *See id.* at 429, 569 N.W.2d at 90. The 800 and 900 blocks of Hamilton Street had a reputation for drug dealing, gangs, criminal activity and gunshots; the reputation of an area is another factor in the totality of the circumstances equation. *See State v. Amos*, 220 Wis. 2d 793, 799, 584 N.W.2d 170, 173 (Ct. App.), *review denied*, 221 Wis. 2d 655, 588 N.W.2d 633 (1998). The contact between Allen, his companion and the car took place late at night; the

time of day is another factor in the totality of the circumstances equation. *See State v. Flynn*, 92 Wis. 2d 427, 435, 285 N.W.2d 710, 713 (1979).

We do not believe that whether Allen was the individual who entered the car is dispositive. In *State v. Cheers*, 102 Wis. 2d 367, 393–94, 306 N.W.2d 676, 688 (1981), the supreme court wrote, "While mere association with one suspected of criminal activity does not, without more, give to [sic] probable cause to arrest, it does lend corroborative information to knowledge already in the possession of the police." (Citations omitted.) If in fact Allen's companion was the person who entered the car, Allen's presence is another building block in the totality of the circumstances equation.

Allen and his companion being in a high-crime area, standing alone, would not be enough to create reasonable suspicion. A brief contact with a car, standing alone, would not be enough to create reasonable suspicion. Hanging around a neighborhood for five to ten minutes, standing alone, would not be enough to create reasonable suspicion. On the other hand, when these three events occur in sequence and are combined with the officers' experience and training, the reputation of the area and the time of day, there is enough to create a reasonable suspicion to justify a *Terry* stop.

> Any one of these facts, standing alone, might well be insufficient. But that is not the test we apply. We look to the totality of the facts taken together. The building blocks of fact accumulate. And as they accumulate, reasonable inferences about the cumulative effect can be drawn. In essence, a point is reached where the sum of the whole is greater than the sum of its individual parts. That is what we have here. These facts gave rise to a reasonable

suspicion that something unlawful might well be afoot.

*Waldner*, 206 Wis. 2d at 58, 556 N.W.2d at 685.

In challenging the frisk, Allen asserts that a protective search is valid only if the searching officer has articulable facts which lead him or her to reasonably conclude that the suspect who was stopped might be armed. Allen contends that Boldus did not have an "individualized suspicion" that he was armed.

A frisk or pat-down of a person being questioned during an investigatory stop is reasonable if the stop itself is reasonable and if the officer has reason to believe that the person might be armed and dangerous. *See State v. Chambers*, 55 Wis. 2d 289, 294, 198 N.W.2d 377, 379 (1972). This limited form of protective search is permitted because it is for the protection of the police and others nearby; it must be confined in scope to an intrusion reasonably designed to discover instruments which could be used to assault the officer. *See State v. Washington*, 134 Wis. 2d 108, 123, 396 N.W.2d 156, 162 (1986). Again, an objective test of whether a person of reasonable caution would believe that the action is appropriate is used to review the officer's decision to frisk. *See Flynn*, 92 Wis. 2d at 433–34, 285 N.W.2d at 712–13. And again, the officer must be able to point to specific facts which reasonably warrant the intrusion. *See id.*

When asked if he had any specific facts about Allen that gave him a reasonable suspicion that Allen was armed, Boldus replied that he would frisk anyone he stopped under similar circumstances. "It is not simply the nature of the suspected offense but all of the circumstances under which the confrontation takes place that must be taken into consideration in determining

76

whether an officer is entitled to conduct a limited weapons search of a person whom he has justifiably stopped." *Id*. at 435, 285 N.W.2d at 713.

Given the circumstances present here, including the time of day, a brief contact in a car, the contact could not be observed, hanging around after the contact and all of this happening in a high-crime area, the police officer was justified in his precautionary patdown to determine if Allen was armed and dangerous. *See Morgan*, 197 Wis. 2d at 214–15, 539 N.W.2d at 893. It bears repeating that "[p]olice officers are not required to take unnecessary risks in the performance of their increasingly hazardous duties." *State v. Beaty*, 57 Wis. 2d 531, 539, 205 N.W.2d 11, 16 (1973).

Even if Allen was not the person who entered the car, Boldus was justified in frisking Allen and his companion. It is permissible for police officers to extend a protective search beyond the individual stopped for temporary questioning to this individual's companion where the officer reasonably suspects that the companion might be an accomplice. *See State v. Moretto,* 144 Wis. 2d 171, 181, 423 N.W.2d 841, 845 (1988).

In conclusion, we hold that the facts known to the police officers, along with their training and experience, the high-crime reputation of the area and the time of the day, coalesce to establish a reasonable suspicion that justified both the stop and the frisk of Allen.[3]

---

[3] Because the stop and frisk are valid, it is not necessary for us to consider Allen's argument that his statement claiming possession of the marijuana for personal use should be suppressed as the "fruit of the poisonous tree."

*By the Court.*—Judgment affirmed.