STATE of Wisconsin, Plaintiff-Respondent,

v.

Eugene PATTON, Defendant-Appellant.

Court of Appeals

*No. 2005AP3084–CR. Submitted on briefs October 5, 2006. —Decided October 25, 2006.*

2006 WI App 235

(Also reported in 724 N.W.2d 347.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Daniel R. Clausz* of *Peterson, Berk & Cross, S.C.,* of Appleton.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager,* attorney general, and *Shunette T. Campbell,* assistant attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. This is an "anonymous tipster" case. Eugene Patton appeals from a judgment of conviction for robbery with use of force as a party to a crime pursuant to Wis. Stat. §§ 943.32(1)(a) and 939.05 (2003–04).[1] Patton pled no contest to the charge follow-

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

ing the trial court's denial of his motion to suppress. Patton's motion contended that the police lacked reasonable suspicion to temporarily detain him and his two companions. Patton renews this argument on appeal. We uphold the trial court's ruling and affirm the judgment of conviction.

## FACTS AND PROCEDURAL HISTORY

¶ 2. The pertinent facts as developed at the suppression hearing are not in dispute. On October 20, 2004, at approximately 8 p.m., City of Manitowoc Police Officer Mark Schroeder was conducting a traffic stop just west of 36th Street and Calumet Avenue. At that time, Schroeder received a dispatch message relaying information from an anonymous person reporting the following. Three black males had committed an armed robbery using a 9–millimeter pistol; the three men were walking westbound from Shopko and were wearing heavy winter jackets, one of which was red; the men might be from Illinois or Indiana; and they might be headed to the Greyhound bus station. The anonymous caller also reported that he or she had the men in sight, but had lost sight of them shortly thereafter.

¶ 3. While receiving this dispatch, Schroeder observed three black males, one of whom was wearing a red jacket, walking westbound on Calumet Avenue in front of Shopko. Schroeder was approximately 150–200 yards away from the men at this time. Schroeder notified other officers that he had spotted the suspects, and he waited for assistance before taking further action.

¶ 4. When the suspects reached the vicinity of 35th Street and Calumet Avenue, Schroeder heard a siren from a police vehicle responding to his call for

419

assistance. At the same time, Schroeder observed the suspects stop, turn around, and look back in the direction of the siren. They then made a left turn in the middle of the block and entered a Mexican restaurant. Schroeder thought the suspects might be hiding, so he ordered the responding officer to turn off the siren. Approximately fifteen to twenty seconds after the siren was turned off, Schroeder saw the suspects emerge from the restaurant and continue to walk westbound on Calumet Avenue in the direction of the bus station which was located at 41st and Calumet. At this time, Schroeder and another officer who had arrived on the scene drew their weapons and detained the suspects. In addition to the above information, the criminal complaint reports that the victim of the robbery was then brought to the scene where he identified the suspects as the three black men who had robbed him.

¶ 5. The police property inventory logs for the three suspects do not reference a red jacket. However, the inventory log for one of the suspects does reference a red shirt, a red headband, and red pants.

¶ 6. Patton was charged with party to the crime of robbery by use of force pursuant to Wis. Stat. §§ 943.32(1)(a) and 939.05.[2] Patton brought a motion to suppress contending that the police did not have reasonable grounds to detain him because the information provided by the anonymous tipster did not provide sufficient indicia of reliability under *Florida v. J.L.*, 529 U.S. 266 (2000), *State v. Rutzinski*, 2001 WI 22, 241

---

[2] A search of the suspects at the scene of the temporary detention did not reveal a gun. Nor did the victim report that a gun had been displayed during the robbery. Instead, he reported that the suspects had physically assaulted him, hence the charge of robbery by use of force, not armed robbery.

Wis. 2d 729, 623 N.W.2d 516, and related law.[3] The trial court denied the motion, ruling that the anonymous tipster's information, coupled with the suspects' entry into the restaurant when the siren sounded and subsequent departure therefrom shortly after the siren was silenced, provided reasonable suspicion for the investigatory stop and temporary detention. Patton appeals.

## STANDARD OF REVIEW

¶ 7. When we review a trial court's ruling on a motion to suppress, we uphold the trial court's factual findings unless those findings are clearly erroneous. *State v. Richardson*, 156 Wis. 2d 128, 137–38, 456 N.W.2d 830 (1990). However, whether an investigatory stop meets constitutional and statutory standards is a question of law that we review de novo. *See State v. Krier*, 165 Wis. 2d 673, 676, 478 N.W.2d 63 (Ct. App. 1991).

## DISCUSSION

### The Law Of Temporary Detention and Anonymous Tipsters

¶ 8. Both the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution guarantee the right to be free

---

[3] Patton's motion sought suppression on the grounds of an illegal arrest. However, the proceedings at the suppression hearing revealed that Patton's actual argument was that the police lacked reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1 (1968), to detain him because the information provided by the anonymous tipster did not provide sufficient indicia of reliability.

from unreasonable searches and seizures. *Richardson*, 156 Wis. 2d at 137. We interpret these protections under the Wisconsin Constitution in accord with the United States Supreme Court's interpretation of the Fourth Amendment. *State v. Fry*, 131 Wis. 2d 153, 172, 388 N.W.2d 565 (1986).

■■■

¶ 9. WISCONSIN STAT. § 968.24, titled "Temporary questioning without arrest," represents the codification of the Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1 (1968). The statute authorizes a law enforcement officer to detain a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, or is about to commit, a crime. A *Terry* stop is not an arrest, and the standard for the stop is less than probable cause. *State v. Allen*, 226 Wis. 2d 66, 70–71, 593 N.W.2d 504 (Ct. App. 1999). Instead, the standard is reasonable suspicion, which is "a particularized and objective basis for suspecting the person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (citation omitted).

■■■

¶ 10. Under appropriate circumstances, an informant's tip can provide a law enforcement officer with reasonable suspicion to effectuate a *Terry* stop. *Rutzinski*, 241 Wis. 2d 729, ¶ 17; *J.L.*, 529 U.S. at 270. However, before acting on an informant's tip, the police must consider its reliability and content. *Rutzinski*, 241 Wis. 2d 729, ¶¶ 17–18. In other words, "Tips should exhibit reasonable indicia of reliability." *Id.*, ¶ 18. When the tipster is anonymous, the police must corroborate the information through independent investigation.

422

*Id.*, ¶ 22.[4] The degree of necessary corroboration will vary with the particular case. The less reliable the tip, the more the necessity for additional information to establish reasonable suspicion. *Id.*, ¶ 23. Tips from anonymous informants may be reliable if the tip contains "inside information or a similar verifiable explanation of how the informant came to know of the information in the tip, which the police in turn independently corroborate." *Id.*, ¶ 25. "Stated another way, if a tip contains strong indicia of an informant's basis of knowledge, there need not necessarily be any indicia of the informant's veracity." *Id.*

## The Law Applied to This Case

¶ 11. We begin by analyzing three cases that fall along the spectrum of "reasonable indicia of reliability." We first address *J.L.*, a case where the tipster's information fell below the required threshold for reasonable indicia of reliability. Patton principally relies on this case. We recite the facts directly from the opinion:

> [A]n anonymous caller reported to the Miami-Dade Police that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. So far as the record reveals, there is no audio recording of the tip, and nothing is known about the informant. Sometime after the police received the tip—the record does not say how long—two officers were instructed to

---

[4] This is opposed to the situation where the police receive a tip from an informant that they are reasonably justified in believing to be truthful. In such a situation, the police may rely *solely* on the tip to provide reasonable suspicion for a stop. *State v. Rutzinski*, 2001 WI 22, ¶¶ 19–21, 241 Wis. 2d 729, 623 N.W.2d 516. This may occur in cases where the tipster's identify is known and/or where the police have received reliable tips from the person in the past. *Id.*

respond. They arrived at the bus stop about six minutes later and saw three black males "just hanging out [there]." One of the three, respondent, J.L., was wearing a plaid shirt. Apart from the tip, the officers had no reason to suspect any of the three of illegal conduct. The officers did not see a firearm, and J.L. made no threatening or otherwise unusual movements. One of the officers approached J.L., told him to put his hands up on the bus stop, frisked him, and seized a gun from J.L.'s pocket.

*J.L.*, 529 U.S. at 268 (citations omitted).

¶ 12. Holding that the tipster's information did not provide sufficient grounds for detaining J.L., the Supreme Court said:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*Id.* at 272.

¶ 13. At the other end of the spectrum is *Rutzinski*, where the tipster's information provided strong evidence of reliability. There, an anonymous cell phone caller reported to the police that he or she was observing a vehicle that was weaving in its lane of traffic, varying its speed, and "tailgating." *Rutzinski*, 241 Wis. 2d 729, ¶ 4. The caller remained on the cell phone while continuing to report the location of the suspect vehicle. *Id.*, ¶ 5. A police officer located the suspect vehicle and began following it. *Id.*, ¶ 6. The officer was then informed that the caller was still on the cell phone

and was traveling in front of the suspect vehicle. *Id.* The officer did not observe any erratic driving, but stopped the suspect vehicle nonetheless based on the informant's information. *Id.*, ¶ 7. After observing the driver (Rutzinski) and administering an Intoxilyzer test, the officer arrested Rutzinski for operating under the influence. *Id.*

¶ 14. Upholding the stop of Rutzinski's vehicle, the Wisconsin Supreme Court noted that in some circumstances, "if there are strong indicia of the informant's veracity, there need not necessarily be any indicia of the informant's basis of knowledge." *Id.*, ¶ 21. Rejecting Rutzinski's attempt to liken his case to *J.L.*, the court noted that the *Rutzinski* caller could reasonably infer that the police could discover his or her identity because he or she had revealed her location in front of the suspect vehicle. *Rutzinski*, 241 Wis. 2d 729, ¶ 32. As such, the court concluded that the caller "knew that he or she potentially could be arrested if the tip proved to be fabricated." *Id.* In addition, the court noted that the caller was providing ongoing reports as to his or her personal observations of Rutzinski's contemporaneous actions. *Id.*, ¶ 33. From this, the court concluded that the officer "reasonably could have inferred . . . that the informant had a reliable basis of knowledge." *Id.* Finally, the court noted, unlike the tip in *J.L.*, the tip in *Rutzinski* suggested an imminent threat to the public safety because erratic driving is "one possible sign of intoxicated use of a motor vehicle." *Id.*, ¶ 34.

¶ 15. The third case we address is *Alabama v. White*, 496 U.S. 325 (1990), a case that falls somewhere in the middle of the "reasonable indicia of reliability" spectrum. There, an anonymous caller reported to the police that White would be leaving an apartment loca-

tion at a particular time in a particular vehicle with a broken right taillight. *Id.* at 327. The caller further reported that White would be traveling to a particular motel and would be in possession of cocaine located inside a brown attaché case. *Id.*

¶ 16. The police proceeded to the apartment complex where they observed a vehicle that matched the description provided by the anonymous caller. *Id.* During the surveillance, the police observed a woman leave the apartment building, carrying nothing, and enter the vehicle. *Id.* The woman then drove the vehicle, with the police following, on the most direct route to the motel location reported by the anonymous caller. *Id.* The police stopped the vehicle "just short" of the motel. *Id.*

¶ 17. The Supreme Court identified the issue as "whether the [anonymous] tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Id.* at 326–27. Acknowledging that the case was "close," the Court concluded that the anonymous tip, as corroborated by the officers, "exhibited sufficient indicia of reliability to justify the investigatory stop . . . ." *Id.* at 332. The Court said that although not every detail mentioned by the tipster was verified, other information was sufficiently corroborated. *Id.* at 331. In particular, the Court noted that the woman left the apartment building described by the tipster, entered a vehicle matching the description provided by the tipster, and took a route consistent with that predicted by the tipster. *Id.*

¶ 18. We reject Patton's argument that this case is governed by *J.L.* The tipster in that case simply provided a description of a person who would be at a particular bus stop in possession of a gun. The troubling thing for the Supreme Court was the absence of

anything that indicated the reliability of the tipster's "assertion of illegality." *J.L.*, 529 U.S. at 272. "All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the suspect]." *Id.* at 271.

¶ 19. Here, although the anonymous tipster did not provide any information indicating the basis of his or her knowledge of the alleged armed robbery, the tipster's additional information about the location of the suspects, their direction of travel and their appearance was contemporaneously verified by Schroeder's observations as he was receiving the tipster's information via the police dispatch. The Wisconsin Supreme Court deemed this same factor important in *Rutzinski* when the court held that the tipster's information carried sufficient indicia of reliability. *Rutzinski*, 241 Wis. 2d 729, ¶ 33. In short, the totality of the circumstances in this case conveys a greater indicia of the tipster's reliability than in *J.L.*

¶ 20. On the other hand, this case is not as strong as *Rutzinski*, and we do not read the State to argue otherwise. The tipster's information to the police about Rutzinski's driving was the product of first-hand, personal observations as he or she was contemporaneously reporting those observations to the police department. Moreover, the tipster was virtually "on the scene" of the offense because he or she was traveling directly in front of Rutzinski's vehicle with the police following directly behind.

¶ 21. Thus, the instant case has more than *J.L.*, but less than *Rutzinski*, on the question of sufficient indicia of reliability. On the one hand, the tipster

provided accurate and contemporaneous information regarding the suspects' location, direction of travel, and attire, all corroborated by Schroeder's observations.[5] On the other hand, the tipster provided no information indicating his or her basis for knowing that the suspects had committed an armed robbery or had a gun. Thus, we deem this a "close" case akin to *White. See White*, 496 U.S. at 332. But unlike the Supreme Court in *White*, we need not conclusively decide whether the tipster's information, standing alone, provided sufficient indicia of reliability.

¶ 22. We began this opinion with the statement, "This is an 'anonymous tipster' case." Perhaps we should have said, "This is an 'anonymous tipster' case *and more*." We say that because this case has an additional factual component, *separate and apart from the information provided by the tipster,* that contributed to reasonable suspicion to detain the suspects, namely, the "siren component." The trial court deemed this an important factor, and we do also.

¶ 23. When Schroeder made his initial observations of the suspects at the location indicated by the tipster, he notified other officers and waited for their assistance. Schroeder then heard the siren of one of the responding police vehicles. At the same time, Schroeder

---

[5] We appreciate that the police inventory logs, while reporting various red attire of one of the suspects, do not show the existence of a red jacket. However, the logs were prepared *after* Schroeder's observations. The task before us is to measure the reliability of the tipster's information against Schroeder's observations. The later-prepared logs may arguably call into question the accuracy of the tipster's information and Schroeder's observations. But the logs do not alter the facts that the informant said one of the suspects was wearing a red jacket and that Schroeder observed that very attire.

saw the suspects stop, turn around and look back in the direction of the siren. They then turned left in mid-block and entered a restaurant. Schroeder deemed this suspicious, thinking the suspects might be hiding, so he radioed to have the siren turned off. Approximately fifteen to twenty seconds after the siren was turned off, the suspects emerged from the restaurant and continued to walk westbound on Calumet Avenue, a route that could take them to the Greyhound bus station, the destination reported by the tipster. We conclude that this added factual component, in conjunction with the information provided by the tipster, provided the requisite reasonable suspicion under *Terry* and WIS. STAT. § 968.24 to justify the temporary detention of the suspects.

¶ 24. Patton proffers alternative innocent explanations for the suspects' short stay in the restaurant: e.g., the wait for service was too long or the suspects were asking for directions. However, the law of *Terry* holds that the police are not required to rule out the possibility of innocent behavior before initiating a *Terry* stop. *State v. Anderson*, 155 Wis. 2d 77, 84, 454 N.W.2d 763 (1990). "[S]uspicious conduct by its very nature is ambiguous, and the principle function of the investigative stop is to quickly resolve that ambiguity." *Id*. That was the very situation confronting the police in this case.

¶ 25. We uphold the trial court's order denying Patton's motion to suppress. Consequently, we affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.