**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**November 3, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP860**

STATE OF WISCONSIN

Cir. Ct. No. **2019TR4090**

IN COURT OF APPEALS
DISTRICT IV

WAUPACA COUNTY,

PLAINTIFF-RESPONDENT,

V.

HUNTER JA DEAN WHEELOCK,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waupaca County: TROY NIELSEN, Judge. *Affirmed*.

¶1 KLOPPENBURG, J.[1] Hunter Wheelock appeals a judgment convicting him, after a trial to the circuit court, of operating a motor vehicle with a

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

restricted controlled substance. Wheelock challenges the court's denial of his motion to suppress evidence obtained after he was detained by a law enforcement officer. Specifically, Wheelock argues that he was unconstitutionally seized when the officer detained him without reasonable suspicion that he was or was about to be engaged in criminal activity. I conclude that, based on the totality of the circumstances, the officer had reasonable suspicion to detain Wheelock. Accordingly, I affirm.

## BACKGROUND

¶2 The circuit court held a hearing on Wheelock's suppression motion, and the officer, then Sergeant Kevin Studzinski of the Waupaca County Sheriff's Office, was the only witness who testified at the hearing.[2] The following facts, taken from Studzinski's testimony at the hearing, which was implicitly credited by the court, are undisputed.

¶3 Studzinski has worked as a law enforcement officer for the Waupaca County Sheriff's Office since 2001. He also worked as a drug enforcement officer with the Sheriff's Office and the Central Wisconsin Drug Task Force. Since 2012 he has led the Waupaca County Drug Unit, and has received hundreds of hours of training related to drug enforcement and the effect of drug use on the individual user as well as the community. He has performed over one hundred traffic stops in which he suspected that the person operating the vehicle was under the influence of drugs or narcotics.

---

[2] Both parties note that Studzinski was promoted to the rank of Lieutenant between the time of his contact with Wheelock and the motion hearing.

¶4     During the night of November 2, 2019, while driving an unmarked squad car, Studzinski observed a vehicle parked on the side of a dead-end road with its headlights on and its engine running.  Studzinski drove by the vehicle and saw two young men inside, who were later identified as Wheelock and a passenger.  The dead-end road was known to police as a "highly problematic" area where people of Wheelock's and the passenger's age range frequently engaged in disorderly behavior and underage drug use and drinking parties.

¶5     Studzinski drove up the road, turned around, and pulled up next to the vehicle, with his driver's side window alongside Wheelock's window, to see whether they were "stopped to use the phone [or] if they have some kind of an emergency or if the vehicle broke down."  Studzinski rolled down his window, Wheelock rolled down his window, and Studzinski shined a flashlight in the vehicle and asked Wheelock and the passenger "what they were doing."  They said they were looking for a place to go sledding.  While talking to them, Studzinski saw that they both had glassy, red, and watery eyes.  In Studzinski's experience, this indicated "that they could be under the influence of" alcohol or drugs.  Studzinski told them to stay where they were and that he needed to talk to them.  He then turned on his emergency lights and pulled in behind them.  As a result of the search that followed, Wheelock was arrested and charged with operating a motor vehicle with a restricted controlled substance.

## DISCUSSION

¶6     An appellate court reviews a motion to suppress evidence under a two-step analysis. ***State v. Eason***, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625.  First, we review the circuit court's findings of fact, which we uphold unless they are clearly erroneous; second, we review the application of constitutional

principles to those facts de novo. *State v. Felix*, 2012 WI 36, ¶22, 339 Wis. 2d 670, 811 N.W.2d 775; *County of Grant v. Vogt*, 2014 WI 76, ¶17, 356 Wis. 2d 343, 850 N.W.2d 253. Whether a seizure is reasonable is a constitutional question of fact to which we apply the same two-step standard of review. *State v. Knapp*, 2005 WI 127, ¶19, 285 Wis. 2d 86, 700 N.W.2d 899.

¶7 The Fourth Amendment of the United States Constitution and article I, section 11 of the Wisconsin Constitution protect the right to be free from unreasonable searches and seizures. *State v. Young*, 2006 WI 98, ¶18, 294 Wis. 2d 1, 717 N.W.2d 729. An investigatory (or *Terry*) stop[3] is reasonable if it is supported by reasonable suspicion. *Vogt*, 356 Wis. 2d 343, ¶27. "An officer has reasonable suspicion when [the officer] 'possesses specific and articulable facts which would warrant a reasonable belief that criminal activity was afoot.'" *Id.* "The determination of reasonableness is a common sense test. The crucial question is whether the facts of the case would warrant a reasonable police officer, in light of [the officer's] training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime." *State v. Post*, 2007 WI 60, ¶13, 301 Wis. 2d 1, 733 N.W.2d 634. "A determination of reasonable suspicion is made based on the totality of the circumstances." *State v. Anderson*, 2019 WI 97, ¶33, 389 Wis. 2d 106, 935 N.W.2d 285.

¶8 An investigatory stop must be based on more than a police officer's "inchoate and unparticularized suspicion or 'hunch.' Rather, the officer 'must be able to point to specific and articulable facts which, taken together with rational

---

[3] *Terry v. Ohio*, 392 U.S.1 (1968), announced the applicable constitutional standard for brief investigatory stops. *See State v. Chambers*, 55 Wis. 2d 289, 294, 198 N.W.2d 377 (1972) (recognizing the *Terry* standard).

inferences from those facts, reasonably warrant' the intrusion of the stop." *Post*, 301 Wis. 2d 1, ¶10 (quoted source omitted); *Vogt*, 356 Wis. 2d 343, ¶29 (reasonable suspicion requires more than a "savvy hunch" from an officer); *State v. Houghton*, 2015 WI 79, ¶¶12, 21, 364 Wis. 2d 234, 868 N.W.2d 143. However, the "standard for the stop is less than probable cause," *State v. Patton*, 2006 WI App 235, ¶9, 297 Wis. 2d 415, 724 N.W.2d 347, and a police officer is "not required to rule out the possibility of innocent behavior before initiating a brief stop." *State v. Anderson*, 155 Wis. 2d 77, 84, 454 N.W.2d 763 (1990).

¶9     Wheelock asserts that there must be a nexus between the facts and "some wrongdoing" to support reasonable suspicion. This assertion overstates the legal standard, which is that the nexus must be between the facts and the suspicion that a person may have engaged or be about to engage in "wrongdoing." *Post*, 301 Wis. 2d 1, ¶13. The law does not require certainty of "wrongdoing."

¶10     Here, the circuit court's determination of reasonable suspicion was based on there being two young men sitting after dark in a parked car with the engine running and lights on; the young men were on a dead-end road in an area known by police to be an area in which people of the young men's age range typically engage in disorderly behavior including alcohol and drug use; both young men exhibited glassy, red, and watery eyes; which, based on the officer's experience, may indicate being under the influence of alcohol or drugs. I conclude that these facts, taken together, suffice to support reasonable suspicion of operating under the influence of alcohol or drugs.

¶11     Wheelock analogizes the facts in this case to facts in cases in which courts have invalidated stops as lacking suspicion based *solely* on the individual's being in a high-crime area. *See Brown v Texas*, 443 U.S. 47, 51-52 (1979) (no

reasonable suspicion that Brown was engaged in criminal conduct when officers saw him walk away from another man in an area known to be frequented by drug users and the officers did not recognize him); *State v. Young*, 212 Wis. 2d 417, 430, 569 N.W.2d 84 (Ct. App. 1997) (no reasonable suspicion that Young was engaged in criminal conduct when officer saw him engage in "short-term contact" with another man in an area known for drug trafficking); *State v. Diggins*, No. 2012AP526-CR, unpublished slip op. at ¶15, (WI App July 30, 2013)[4] (no reasonable suspicion when Diggins, dressed in dark clothing, was seen at night "hanging out" for five minutes in a high-crime neighborhood).

¶12    These cases are easily distinguished. Here, Wheelock was sitting in the driver's seat of a car, with its engine running and lights on, after dark on a dead-end road known for alcohol and drug use, and the eyes of both Wheelock and his passenger were red, watery, and glassy. It is the totality of all of these circumstances, including the facts specific to Wheelock, that supports reasonable suspicion that Wheelock was operating or was about to operate a vehicle while under the influence of alcohol or drugs. The particularized facts missing in the above-cited cases are not missing here. Contrary to Wheelock's analogy, these facts taken together do not describe only "conduct that large numbers of innocent citizens engage in every day for wholly innocent purposes." *Young*, 212 Wis. 2d at 429-30. Rather, these facts support reasonable suspicion that Wheelock's conduct was not innocent.

---

[4] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored, unpublished opinions issued after July 1, 2009, for their persuasive value).

¶13    Wheelock also argues that each of these facts, standing alone, does not suffice to support reasonable suspicion, and that each fact, standing alone, also describes innocent conduct.  However, as explained above, the law requires that this court consider the totality of the circumstances, meaning all of the facts taken together.  Wheelock also describes indicia of criminal conduct that are not present here, such as slurred speech, fleeing from the officer, and the like.  That there are other facts that could support reasonable suspicion does not mean that the facts that do exist do not suffice.

¶14    Wheelock asserts in a footnote that "watery" eyes always look "glassy," so that Studzinski's observation of "glassy" eyes "adds nothing to the reasonable suspicion inquiry."  Wheelock does not explain this assertion with citations to either the record or legal authority.  Accordingly, I do not consider it further.  Finally, Wheelock takes issue with the State's references to Wheelock both being startled to see Studzinski and telling Studzinski that he and his passenger were looking for a place to go sledding.  I do not rely on those facts or the State's references to them.

## CONCLUSION

¶15    For the reasons discussed above, I conclude that reasonable suspicion supported the officer's detention of Wheelock and, therefore, I affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.