COURT OF APPEALS
DECISION
DATED AND FILED

April 28, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1763-CR**

Cir. Ct. No. **2022CF136**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SHAWN CLARKE SPOTTSWOOD,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for St. Croix County: R. MICHAEL WATERMAN, Judge.[1] *Affirmed and remanded with directions*.

¶1 HRUZ, J.[2] Shawn Clarke Spottswood appeals from a judgment of conviction, entered upon his guilty plea, for receiving or concealing stolen property and following the circuit court's denial of his motion to suppress

---

[1] The Honorable Edward F. Vlack III presided over the motion to suppress hearing. The Honorable R. Michael Waterman presided over the plea hearing and ultimately entered the judgment of conviction.

[2] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

evidence obtained during a warrantless search of his vehicle. Spottswood argues that the court erred by denying the motion because law enforcement lacked reasonable suspicion that Spottswood had committed, was committing, or was about to commit an offense sufficient to justify the search under 2013 Wis. Act 79 and WIS. STAT. § 973.09(1d). We reject Spottswood's argument and affirm.[3]

## BACKGROUND

¶2    The following evidence was presented at the hearing held on Spottswood's motion to suppress evidence obtained during the search of his vehicle. After sunset on March 1, 2022, Deputies Aaron Boldt and Mitchell Schaeppi of the St. Croix County Sheriff's Office responded to the area of the Houlton Park and Ride lot located near Exit 1 of Highway 35/64. This is the first exit encountered by drivers traveling from Minnesota on (MN) State Highway 36 to Wisconsin on (WI) State Highway 64.[4]

¶3    Deputy Boldt made initial contact with Spottswood, the sole occupant of a vehicle parked at the location. Boldt and Schaeppi observed a vehicle that was located past the main parking lot and was not parked in a designated parking area. Rather, it was parked in a dark, unlit area near a cell

---

[3] There is a clerical error in Spottswood's judgment of conviction. The judgment of conviction indicates that the conviction for the count of receiving stolen property included the repeater penalty enhancer. As part of the plea agreement, however, Spottswood agreed to plead guilty to an amended charge with the enhancer removed. He was also properly instructed at the plea hearing on the maximum penalties without the enhancer. We remand the matter to the circuit court so that the judgment can be amended to remove reference to the enhancer.

[4] Pursuant to WIS. STAT. § 902.01(2), we take judicial notice of this fact after review of the Wisconsin Department of Transportation's Traffic Engineering, Operations & Safety Manual. Page 8 identifies this exit as the first in Wisconsin when travelling from Minnesota. Wis. Dep't of Transp., Traffic Engineering, Operations & Safety Manual ch. 2 § 6 sub. 19, at 8 (July 2024), https://wisconsindot.gov/dtsdManuals/traffic-ops/manuals-and-standards/teops/02-06.pdf. The parties do not appear to dispute this fact.

tower on a dirt path behind a sign that, according to Boldt, read "Authorized Personnel Parking Only."[5] Both deputies testified that there were plenty of empty parking spaces in the park and ride lot.

¶4 Spottswood explained to the deputies that he was parked at that location to repair and add oil to a malfunctioning pulley system on his vehicle. Deputy Schaeppi acknowledged that oil was visible outside the vehicle. When the deputies asked Spottswood why he had parked in an unlit area rather than under the lights of the park and ride lot, Spottswood explained only that he did not need lighting because he had a flashlight.

¶5 During further questioning at the scene, Spottswood told the deputies that he "didn't know why" he had crossed the bridge into Wisconsin. Spottswood also stated that he did not park in the park and ride lot itself because his vehicle had previously been towed when parking overnight at park and rides in Minnesota. Deputy Schaeppi testified that he did not find Spottswood's explanation credible, and he believed that Spottswood had no legitimate reason for being in the restricted area at that time.

¶6 According to Deputy Schaeppi, he was familiar with the Houlton Park and Ride based on prior responses to complaints of thefts and drug-related criminal activity there. Deputy Boldt similarly testified that this location was considered a high-crime area, with significant drug activity, people with outstanding warrants, vehicle thefts, and thefts of items inside vehicles.

---

[5] According to Deputy Schaeppi the sign read "Restricted to Authorized Vehicles Only." We view these slightly different characterizations of the sign's language as substantially the same.

¶7 Deputy Schaeppi stated that during the interaction with Spottswood, he did not observe any signs of impairment and did not see any drug paraphernalia or controlled substances in plain view. After searching Spottswood's record and background information, however, the deputies learned that Spottswood was on probation for possession of methamphetamine and felony bail jumping, as well as having a history of charges for drug possession. Based on the unusual location of the parked vehicle, the adjacent park and ride being a high-crime area, Spottswood's probationary status, his history of drug use, and Spottswood's odd responses to their questions, the deputies concluded that they had reasonable suspicion that a crime had been, was being, or was about to be committed, and they conducted a warrantless search of the vehicle pursuant to 2013 Wis. Act 79, otherwise known as an ("Act 79 search"). During the Act 79 search, the deputies located lock-picking tools; license plates, which were later confirmed to be stolen; and construction tools that were suspected of being stolen.

¶8 Thereafter, Spottswood was charged with possession of burglarious tools, receipt of stolen property, and misdemeanor bail jumping. After being charged, Spottswood moved to suppress the evidence obtained from the search, arguing that the deputies lacked reasonable suspicion to perform the warrantless Act 79 search of his vehicle, thereby violating his Fourth Amendment right to be free from unreasonable searches.

¶9 The circuit court held an evidentiary hearing on Spottswood's motion to suppress. In a subsequent oral ruling, the court denied Spottswood's motion. The court noted that, after reading the motion hearing transcript, it had resolved some initial confusion it had regarding where the dirt path on which Spottswood's vehicle was located in relation to the park and ride lot. The court concluded that reasonable suspicion of criminal activity existed to justify the

warrantless Act 79 search of Spottswood's vehicle based upon: Spottswood's presence in a restricted, dark area rather than the lit park and ride lot; the deputies' knowledge that the location was associated with drug use and thefts; Spottswood's prior convictions, including one involving drug possession; and the fact that Spottswood was currently on probation.

¶10    Spottswood subsequently entered a guilty plea to receiving or concealing stolen property, and the remaining charges, as well as another misdemeanor case, were dismissed outright.  He now appeals.[6]

## DISCUSSION

¶11    The parties agreed at the suppression hearing, and also agree on appeal, that Spottswood was subject to the reduced constitutional protections applicable to probationers under "Act 79."  *See* 2013 Wis. Act 79.  While the Fourth Amendment protects against unreasonable searches and seizures, *State v. Brown*, 2020 WI 63, ¶9, 392 Wis. 2d 454, 945 N.W.2d 584, "what is unreasonable for a probationer differs from what is unreasonable for a law-abiding citizen," *State v. Purtell*, 2014 WI 101, ¶22, 358 Wis. 2d 212, 851 N.W.2d 417.  With that in mind, the Wisconsin Legislature enacted 2013 Wis. Act 79, which, among other things, allows law enforcement to search an individual who is "on probation for a felony or for any violation of [WIS. STAT.] ch. 940, 948, or 961," his or her residence, and any property under his or her control "if the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of probation."  *See* 2013 Wis. Act 79, § 9; WIS.

---

[6] WISCONSIN STAT. § 971.31(10) allows appellate review of an order denying a suppression motion, despite the general rule that guilty pleas constitute a waiver of nonjurisdictional defects and defenses.

STAT. § 973.09(1d). Thus, while "[g]enerally, a full search cannot be accomplished without a determination of probable cause," Act 79 "lowers the legal standard required for a law enforcement officer to perform a search." ***State v. Anderson***, 2019 WI 97, ¶23, 389 Wis. 2d 106, 935 N.W.2d 285.[7]

¶12     There is a two-step inquiry for justifying an Act 79 search. ***Id.***, ¶21. The first inquiry is whether law enforcement had knowledge of an individual's probation status. ***Id.*** The second inquiry is whether, under the totality of the circumstances, law enforcement had reasonable suspicion that the individual was committing, was about to commit, or had committed a crime or a violation of a condition of probation. ***Id.*** On appeal, Spottswood does not dispute that the State met the first inquiry, but he argues that the State failed to satisfy the second inquiry because the deputies searched his vehicle based solely on an inchoate and unparticularized suspicion.

¶13     Reasonable suspicion exists when an officer has a particularized and objective basis, "grounded in specific, articulable facts and reasonable inferences from those facts," to suspect criminal activity. ***State v. VanBeek***, 2021 WI 51, ¶52, 397 Wis. 2d 311, 960 N.W.2d 32 (citation omitted). The determination of reasonableness is a commonsense inquiry based on the totality of the facts and circumstances, not on isolated facts viewed independently. ***State v. Post***, 2007 WI 60, ¶13, 301 Wis. 2d 1, 733 N.W.2d 634; ***State v. Batt***, 2010 WI App 155, ¶18, 330 Wis. 2d 159, 793 N.W.2d 104. The pivotal question is whether

---

[7] In ***State v. Anderson***, 2019 WI 97, ¶13 & n.6, ¶22, 389 Wis. 2d 106, 935 N.W.2d 285, our supreme court analyzed Act 79 as it relates to a person released on extended supervision for a felony offense, not probation. The court's analysis is applicable under both situations, however, because they are treated the same under Act 79. *Compare* WIS. STAT. § 973.09(1d), *with* WIS. STAT. § 302.113(7r).

the facts known to the officer "would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime." *Post*, 301 Wis. 2d 1, ¶13; *State v. Genous*, 2021 WI 50, ¶10, 397 Wis. 2d 293, 961 N.W.2d 41.

¶14 Although reasonable suspicion is a lower standard to satisfy than probable cause, it must be more than an inchoate or unparticularized suspicion or a mere hunch. *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *Genous*, 397 Wis. 2d 293, ¶8. The standard represents a low bar, and officers are not required to rule out innocent explanations before initiating a search. *Genous*, 397 Wis. 2d 293, ¶8. A trained officer may draw inferences and make deductions that might elude an untrained person. *Id.*

¶15 We review a motion to suppress by applying a two-step standard of review. *State v. Eason*, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625. First, we "review the circuit court's findings of historical fact, and [we] will uphold them unless they are clearly erroneous." *Id.* Second, we "review the application of constitutional principles to those facts de novo." *Id.*

¶16 Here, Spottswood does not challenge the circuit court's findings of fact. Based on those factual findings, we conclude, as a matter of law, that the totality of the circumstances in the case supports a conclusion that, at the time Deputies Boldt and Schaeppi searched Spottswood's vehicle, they had reasonable suspicion that Spottswood was committing, was about to commit, or had committed a crime. The court found five facts supporting its conclusion that the deputies had the requisite reasonable suspicion to perform a warrantless Act 79 search of Spottswood's vehicle: (1) Spottswood's presence in a dark area where he was "not supposed to be"; (2) Spottswood's presence near an area "known for

drug uses, thefts, et cetera"; (3) his "prior convictions"; (4) the fact "he was on probation"; and (5) Spottswood's "somewhat confusing" "explanation why he was there" when the deputies first made contact with him.

¶17 Based on their training and experience, the deputies could draw reasonable inferences from these observed circumstances to form the requisite reasonable suspicion. First and most significantly, the deputies reasonably doubted Spottswood's proffered innocent explanation for his presence at the park and ride. His vehicle was located in a dark, unlit area behind a sign restricting access to only authorized vehicles. Spottswood parked in this restricted area despite the presence of a nearby, well-lit, unrestricted and relatively empty public parking lot that he drove past to get to his location. Spottswood's own responses to the deputies' reasonable questions heightened their suspicions. In particular, Spottswood, a Minnesota resident, oddly stated that he did not know why he had crossed into Wisconsin, and he was unable to provide a plausible explanation for being in a restricted, unlit area. Although Spottswood stated that he was repairing a malfunctioning pulley system on his vehicle, that explanation did not account for why he would cross into Wisconsin to do so, why he chose to park in a dark and restricted area rather than in the adjacent well-lit public lot, or why he could not provide a coherent explanation for his presence at that location.

¶18 While Spottswood's claim that he was doing mechanical work on his vehicle is a relevant consideration, it is not dispositive of reasonable suspicion. Reasonable suspicion does not require officers to accept an explanation at face value, particularly where the explanation fails to plausibly account for the surrounding circumstances. *See **State v. Conaway***, 2010 WI App 7, ¶5, 323 Wis. 2d 250, 779 N.W.2d 182 (2009) ("Reasonable suspicion does not require ruling out innocent explanations."). It is one thing to state what one is doing; it is

another to explain why one is present in a particular location (and, here, in another state), at a particular time, and under suspicious conditions.

¶19    Further, the deputies' assessment was informed by their particularized knowledge of the location. *See State v. Allen*, 226 Wis. 2d 66, 74, 593 N.W.2d 504 (Ct. App. 1999) ("[T]he training and experience of the officers involved in an investigative stop is therefore one factor in the totality of the circumstances."). Both deputies testified that they were familiar with the Houlton Park and Ride due to repeated law enforcement contacts involving thefts, drug-related activity, stolen vehicles, and individuals with outstanding warrants being found there.

¶20    Under all of these circumstances, the deputies could reasonably infer that Spottswood's presence at the location where they first encountered him to be inconsistent with him engaging in only lawful activities, and they could reasonably conclude that criminal activity was afoot.

¶21    Spottswood challenges the foregoing conclusion on several grounds, none of which are persuasive. Spottswood largely isolates various facts, attacking them one by one, rather than engaging in the required totality of the circumstances analysis. "We reject 'this sort of divide-and-conquer analysis.'" *Genous*, 397 Wis. 2d 293, ¶12 (citation omitted). The proper analytical framework for reasonable suspicion is not to evaluate the individual details in isolation, but rather to view the constellation of facts as a whole. *Id.* ¶9.

¶22    First, Spottswood contends that his mere presence near the park and ride lot, standing alone, did not establish reasonable suspicion. While he is correct that one's presence in a high-crime area alone is insufficient, it still is one factor

9

that may be considered. *See Allen*, 226 Wis. 2d at 75-76. Here, this factor weighs materially in favor of there being reasonable suspicion.

> [B]eing in a high-crime area, standing alone, would not be enough to create reasonable suspicion. A brief contact with a car, standing alone, would not be enough to create reasonable suspicion. Hanging around a neighborhood for five to ten minutes, standing alone, would not be enough to create reasonable suspicion. On the other hand, when these three events occur in sequence and are combined with the officers' experience and training, the reputation of the area and the time of day, there is enough to create a reasonable suspicion.

*Id.* at 75.

¶23 Further, the "high-crime area" here was not merely a particular neighborhood or street corner. It was a park and ride lot, the whole purpose of which is for people to park their vehicles and leave them, unattended, for extended periods of time. In other words, and as the deputies' experience had already taught them regarding that lot, it was a naturally enticing location for criminals to exploit.

¶24 Spottswood next argues that the search was based solely on the deputies' subjective beliefs and lacked objective factual support. He further asserts that the State asks this court to disregard objective evidence that he was repairing his vehicle and to rely instead on the deputies' subjective interpretations surrounding the stop. This position misstates the law. Reasonable suspicion may arise from a combination of behaviors that are individually consistent with innocent conduct. *See id.* at 74 ("Determining whether there was reasonable suspicion requires us to consider the totality of the circumstances."). We have already explained the objective facts upon which the deputies could and did reasonably rely, and they are sufficient. Moreover, law enforcement officers are

10

not required to accept an individual's innocent explanation at face value,[8] and it is well established that conduct susceptible to innocent explanations may nonetheless support reasonable suspicion when viewed collectively. *Genous*, 397 Wis. 2d 293, ¶¶8-10.

¶25 In sum, we conclude that, under the totality of the circumstances, the deputies had reasonable suspicion that Spottswood had committed, was committing, or was about to commit an offense, such that their Act 79 search of Spottswood's vehicle did not violate the Fourth Amendment. Accordingly, the circuit court properly denied Spottswood's motion to suppress, and we therefore affirm his judgment of conviction.

*By the Court.*—Judgment affirmed and remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[8] Spottswood makes much of the facts that: (1) he had a flashlight to use for his repairs, ostensibly obviating the need to use the lights in the parking lot; (2) oil was observed in his area, thereby crediting his explanation for his conduct; and (3) he was worried about leaving his vehicle in the park and ride overnight. We fail to see why any of his explanations eliminate the deputies' reasonable suspicion that criminal activity was afoot.

Indeed, and as the deputies testified at the motion hearing, elements of these explanations are themselves odd. Why would Spottswood have used a flashlight to view repairs to his vehicle when available, ambient light would have completely freed Spottswood's hands? Why would Spottswood have chosen to travel to a park and ride over a bridge and into another state to complete repair work on his vehicle near, but not in, a park and ride lot when Spottswood never explained that the repair work was necessary to deal with some type of emergency? It is not as if the work had to be done in or near any park and ride lot. And, relatedly, why was Spottswood afraid to leave his vehicle overnight, when there was no evidence suggesting that his vehicle was inoperable, either before or after he added oil to the pulley system?

In short, Spottswood's own alleged facts and explanations were, at best, sufficiently curious, such that the deputies could reasonably decide to give them little import relative to the other, undisputed facts.

11